William WHITE, Employee, Respondent,

v.

SCULLIN STEEL COMPANY, Employer, and American Automobile Insurance Company, Insurer, Appellants.

No. 33152.

St. Louis Court of Appeals.

Missouri.

Dec. 17, 1968.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for appellants.

Max M. Librach, St. Louis, for respondent.

BRADY, Commissioner.

The issue here involved is whether the appellants, hereinafter referred to as "Scullin", are to be charged with the compensation due the respondent, hereinafter referred to as the "employee", in spite of the fact the latter was working for another company not a party to this action at the time of his disability. The referee, the Industrial Commission of this State, and the trial court found Scullin liable.

The employee worked for a company not involved in this action from 1923 until 1948 as a chipper. In October of 1948 he began work as a chipper for Scullin and, except for a period running from April, 1949, to May of 1951, he continued that employment until November of 1954 when he was laid off as a result of a reduction in labor force. While an employee of Scullin he worked on bolsters, side frames, and other things. His tools were a hammer, a chisel and a grinding stone which were operated by compressed air. There was dust and sand flying in the plant. While the Korean War was in progress he worked on military tanks. While inside the tank he was in very close quarters and the dust was very heavy.

From November of 1954 until early 1956 the employee operated a fish and poultry market. He was employed for a period of twenty-eight days during May and June of 1956 by St. Louis Steel Casting Company as a chipper and grinder. We will hereafter refer to this company as St. Louis Steel. While an employee of that company he did chipping, grinding and finishing of steel products. While he was working, sand dust would be in the air as well as fine steel dust taken off the product by the grinder. He wore no respirator or other protection and would inhale the sand and steel dust. When asked whether there was a great deal of dust present during his work at St. Louis Steel he answered: "There be a lot of dust in all steel foundries." St. Louis Steel then laid him off for the reason that the chest x-ray which it had made showed there was a spot on his lung and it informed him that under such circumstances there was too much dust at its plant for him to continue in its employ. He was advised to see his doctor.

Dr. Magarian took an x-ray and informed the employee he had a cloudy lung. He went back to his poultry house operation and also did odd jobs as a building laborer when he could find such work. Near the end of 1956 he was working for still another company not here involved in a freezing compartment at a temperature of ten or twelve degrees below zero. It was while he was engaged in this work he first felt sick and thought he had a cold. When it became very severe he again consulted Dr. Magarian who renewed the diagnosis of a cloudy lung and sent the employee to Pleasant View Sanitarium in East St. Louis where he was informed he had tuberculosis. He was confined in the sanitarium between December of 1956 and June of 1957, and returned at six-month intervals after that time as an out patient for x-ray examination. He filed his claim against Scullin on September 18, 1957, stating therein: "Claimant was employed as a chipper and

grinder for a period of about six years and as such contracted the occupational disease of silicosis. However, the claimant had no disability when he left the employment and same did not araise (sic) until December, 1956."

Evidence was presented in the instant claim which showed that the employee had pending at the time of the hearing before the referee of his claim against Scullin a claim against St. Louis Steel wherein it was alleged the employee was employed as a chipper and grinder for approximately twenty-eight days; as such aggravated a prior disease, silicosis; and that the employee was then suffering from such a condition and was totally and permanently disabled by reason thereof. There was no evidence as to the outcome of this claim.

The employee's medical expert, a Dr. Flance, during the course of his examination was asked the following question and gave the following answer: "Doctor, assume that this man worked for eighteen years as a chipper at American Steel Founries, and assume further, he worked six years as a chipper at Scullin Steel Company, *and twenty-eight days at St. Louis Steel Casting Company*, and taking into consideration the examination, doctor, that you made of him in 1957, and taking into consideration his x-ray examination you made in 1965, doctor, do you have an opinion, based upon a reasonable degree of medical certainty, as to whether or not this man was suffering from lung silicosis at the time you examined him in 1957. * * * A (By the witness): I do. Q You have an opinion? A Yes, sir. Q What is your opinion? A My opinion is he had silicosis in 1957." (Emphasis supplied.)

His further testimony was the work at Scullin did not cause the employee's condition but that it did aggravate it. He was then asked the following questions and gave the answers shown: "Now, doctor, this man has testified he worked for twenty-eight days at St. Louis Steel Casting as a chipper. Doctor, do you have an opinion as to whether or not his twenty-eight days of working at St. Louis Steel Casting as a chipper caused or aggravated the condition you found at the time of your examination? A I do. Q And what is your opinion, doctor? A I don't think it had any affect (sic). It did not cause or aggravate the condition." His further pertinent testimony was that the disease of silicosis results from the cumulative effect of the inhalation of silica particles sufficient in number and concentration to overcome the protective mechanism of the lung so that after a period of time nodules form. His testimony was that this takes a considerable length of time. He was then asked the following questions and gave the following answers: "If an individual went to work in an atmosphere which contained more than five million particles of free silica per cubic foot of ten microns or less in size on the first day he worked there, would he contract silicosis? A No, sir. Q Would he contract silicosis in ten days? A No, sir. Q Would he in two months? A No, sir. Q Would he in a year? A He might if the concentration was heavy enough, and his own individual susceptibility which is difficult to measure. Q Is that when, let's say the man worked in a sufficient concentration to produce silicosis in a normal individual, let us assume he worked there for five years, the silicosis which he developed which is the formation of these little nodules at the end of five years would be the accumulation of day to day debris in the form of silica particles collected in his lungs? A That is correct. Q Each day would make its contribution, what he breathed on the first, second, third day, the tenth day, and after he worked there a year, what he breathed in during the whole first year, the second year, the third, and so forth, until at the end of the five years he had enough to cause the condition? A That is correct. Q Can you eliminate the first or second day or third day as a causative factor? A No, sir. Q Sir? A No, sir. Q

In other words, if you went to elimination of the first or tenth or twenty-fifth day, then you could say you eliminate all the days and finally you wouldn't have a causative factor? A Theoretically you are right. Q Each day makes its contribution whether small or large assuming general similar conditions under which the man is working? A Yes."

■ Scullin's medical expert examined employee and made x-rays of his chest on March 3, 1966. Based upon that examination and his x-rays, and upon other x-rays of the employee's chest in evidence, his opinion was that the employee did not have silicosis.

This claim was filed on September 16, 1957, and so § 287.063(5), RSMo 1959, V.A.M.S., is inapplicable having been passed in 1959. It is therein provided that except in cases involving certain specified diseases or injuries "[T]he employer liable for the compensation in this section provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure, * * *." Silicosis is one of the exceptions and as to it the statute provides: " * * * the only employer liable shall be the last employer in whose employment the employee was exposed during a period of ninety days or more to the hazard of such occupational disease, and, in such cases, an exposure during a period of less than ninety days after the effective date of this section shall be held not to be a last exposure."

No useful purpose can be served by reiterating well-recognized rules of review in workmen's compensation cases. There is no dispute between the parties as to these matters. The determinative issue in this appeal involves what has been referred to as the "last exposure rule". That rule finds expression and is relied upon in King v. St. Louis Steel Casting Co., 353 Mo. 400, 182 S.W.2d 560. In that case there was only one employer but during the course of the development of the disease three different insurance companies were involved. King was exposed from June, 1929, to April, 1942, and died in June of the latter year. The Commission required the last insurance carrier (whose coverage ran from August, 1940, to July, 1942) to pay the entire award. That carrier appealed the decision contending first that there was insufficient competent evidence to support the finding the disease of silicosis was contracted, aggravated or accelerated during its period of coverage; and second that even if it so found the Commission should have held all three insurers liable on some sort of unspecified apportionment basis. The appellant in King offered evidence to show that a change in methods of the employee's work during its term of coverage had greatly lessened the exposure and that the condition of his lungs must have been far advanced prior to the inauguration of its coverage. St. Louis Steel was the defendant in the King case and contended, to quote from the opinion: " * * * that regardless of when the disease began, 'the great preponderance of judicial opinion supports the rule that in compensation cases, based upon occupational disease, liability accrues and attaches to the employer and insurer as of the date of the employe's disability.'" The court held: "We think this view is the sound and proper construction of our Workmen's Compensation Act." The employee in the instant appeal seeks to draw a distinction between the King case and his case on the grounds, as stated in his brief, "There is a vast difference between employer liability and carrier liability in an occupational disease case." He does not state the "vast difference" and we are unable to conceive of any difference that would require us to draw a distinction between the clear principles of law enunciated in King and those to be applied in the instant appeal based upon an alleged "vast difference" between employer liability on one hand and carrier liability on the other.

In the King case (182 S.W.2d, 1. c. 562) the Supreme Court of this State quoted with approval from Textileather Corp. v. Great American Indem. Co., 108 N.J.L. 121, 156 A. 840, stating that case held: " * * * the test for determining when compensation accrues, and which insurer must pay it, is the time when incapacity from occupational disease occurs, and not when the exposure commences or the disease begins to develop." The court also stated: "We approve and adopt the reasoning of the Textileather case, which we hold is applicable to the provisions of our own Act and the proper construction thereof, as follows [108 N.J.L. 121, 156 A. 841]: 'It is a well-known fact that industrial diseases are gradual in development —the first and early steps are not always perceptible. The rate of progress may vary. Sometimes a patient makes a complete recovery; sometimes it is only an apparent one. Sometimes the disease is quiescent and latent; sometimes the fatal course is swift. Medical science cannot always detect and describe the progress of disease. Employees exposed to occupational diseases frequently work for different employers. It is unthinkable that the Legislature should have contemplated that in such instance the recovery of compensation should be defeated. * * * The disability from occupational disease, for which compensation is payable, must necessarily occur when the employee is incapacitated for work. Any other view would make every other provision of the act, and particularly those respecting the time within which the employer must have knowledge of the disease, an absolute nullity. * * * There is no more reason to search for the time when the poisoning first occurred than to search for the second, or third, or fourth exposure. *It is disability after exposure in the employer's business that creates the obligation to compensation.* * * * *The employer's liability was fixed as of that time* and so also the insurance carrier's obligation was assumed as of that date.'" (Emphasis supplied.)

Our Supreme Court in King stated that the reasoning of the Textileather case was applicable to the provisions of the Missouri Workmen's Compensation Act. An extension of that reasoning may be found in a later case from the same jurisdiction. In Masko v. Barnett Foundry & Machine Co., 53 N.J.Super. 414, 147 A.2d 579, the claimant had worked in various foundries for some forty-four years. His last employment was at defendant's foundry for a total period of nine days when disability occurred. The court held: "Bearing in mind, then, that each exposure adds cumulatively to the diseased condition of the lungs, we cannot agree that the nine-day employment at the Barnett Foundry was so slight an exposure as not to have contributed to Masko's silicosis. *Were we to exonerate Barnett, we could not help but become involved in a futile search for an amorphous 'causation,' a search clearly subversive of the philosophy expressed in Textileather Corp. v. Great American Indemnity Co., 108 N.J.L. 121, 156 A. 840 (E. & A.1931), and fully re-examined in Bucuk v. Edward A. Zusi Brass Foundry, 49 N.J.Super. 187, 202 et seq., 139 A.2d 436 (App.Div.1958), certification denied 27 N.J. 398, 143 A.2d 9 (1958)."* (Emphasis supplied.) Later in the opinion at 1. c. 584 the court also held: " ' * * * full liability for permanent disability [fastens] upon that insurer which was on a risk at the time the employee ceased work, absolving any prior insurers regardless of the extremity of progression of the disease, short of cessation of work, during their coverage, and without apparent concern for the shortness of the period of coverage by the last insurer * * * [B]ecause the development of occupational diseases is characteristically gradual, but variable in different diseases and with different persons, the earlier stages being frequently undetectable, *the only rule which would insure the benevolent legislative objective of recovery in every meritorious case was one which would fix liability at the single and easily determinable point when there was*

*inability to work or death.'* * * *."
(Emphasis supplied.)

In Enyard v. Scullin Steel Co., Mo.App., 390 S.W.2d 417, this court gave a comprehensive and exhaustive review of the reasons for the "last exposure rule" and the authorities supporting it, in the course of which we quoted with approval from Larson on Workmen's Compensation Law, Vol. 2, § 95.00, page 471, as follows: " 'When a disability develops gradually, or when it comes as the result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent *injury* or *exposure bearing a causal relation to the disability* is usually liable for the entire compensation.' " (Emphasis supplied.)

There can be no dispute that the evidence in this case establishes the disease of silicosis results from the cumulative effect of the inhalation of silica particles in such number and concentration as to overcome the protective mechanism of the lung so that at some undeterminative period of time nodules form in the lung. It is likewise beyond dispute the employee was first exposed to such disease while working for an earlier employer not here involved; was exposed while working at Scullin; and last exposed while an employee of St. Louis Steel where sand and fine steel dust were in the air, where he wore no respirator or other protection, and where he did inhale the sand and steel dust. Such evidence comes from the employee's own testimony. It is therefore clear that the exposure at St. Louis Steel bore a causal relation to the silicosis of which the employee complains. The contrary situation prevailed in Enyard where this court refused to hold the last employer liable for the reason the nature of the employment was such that employee was not exposed to silicosis and thus his employment was not an "exposure bearing a causal relation to the disability" of which he complained.

The correct determination of the instant appeal has been clearly indicated by King, Textileather, Masko, and Enyard. The "last exposure rule" is obviously a rule of convenience forced upon the courts by the inexactness of medical science which renders impossible the fixing of a definite time when diseases such as silicosis are actually caused and their progression. Under such an interpretation it would seem unnecessary to prove by medical evidence or otherwise the last exposure actually and in fact contributed, caused or aggravated the silicosis or other similar disease. As stated in Textileather, supra, and in Masko, supra, to so require would involve the courts in a search for an amorphous causation which would be futile due to the inexactness of medical science and the nature of the disease of silicosis. Such a requirement would thus be contrary to the philosophy expressed in Textileather and approved by the Supreme Court of this State in King. *It would seem sufficient if the last exposure occurred in conditions which are essentially the same or similar to those prevailing during his other employment and which are recognized as conducive to the development of the disease.* That fact is clearly shown in the instant appeal both from the testimony of the employee and that given by his medical expert.

■ Be that as it may, we do not so hold in the instant appeal for the reason the only evidence the employee's exposure at St. Louis Steel did not cause or aggravate his condition comes from his medical witness, Dr. Flance, and is without probative force. As shown by the excerpts set out in this opinion, the real gist of Dr. Flance's testimony was that every day the employee inhaled silica dust contributed to cause the disease; that no day of inhalation could be eliminated as a causative factor; and that the employee's work for twenty-eight days at St. Louis Steel was one of the reasons supporting his opinion the employee had silicosis in 1957. Yet he later gave testimony which in effect eliminated as a causative factor the twenty-eight days the employee worked at St. Louis Steel and contradicted his testimony that each

day inhalation occurred contributed to the disease by expressing the opinion upon which the employee relies; i. e., that the employee's twenty-eight days work at St. Louis Steel did not cause or aggravate the silicosis. We are of the opinion Dr. Flance's testimony so conflicted with his own previous testimony that it does not constitute substantial evidence to support the finding the silica and steel dust at St. Louis Steel did not cause or aggravate employee's condition. We are left then with the medical testimony concerning the manner in which this disease develops. This testimony is undisputed, is in accord with medical authority, and has been well-recognized in many cases in this jurisdiction. Under such circumstances we are of the opinion the "last exposure rule" is applicable.

■ This opinion is not to be read as holding that any exposure, no matter how brief, automatically calls for the application of the "last exposure rule". The time involved must necessarily depend upon the nature of the disease and the manner in which it develops. In Masko, supra, a nine-day exposure was held sufficient. In Gregory v. Peabody Coal Company, Ky., 355 S.W.2d 156, the time involved was twenty-five shifts extending over a period of approximately thirty days. In State Insurance Fund v. Industrial Commission, 16 Utah 2d 50, 399 P.2d 208, the time involved was seven days. In the instant appeal the time was twenty-eight days and due to the nature of the development of the disease of silicosis as testified to by the employee's medical expert we hold that was sufficient time.

We again call attention to the fact the instant appeal involves only the employee's claim against Scullin. St. Louis Steel is not a party. As stated earlier herein there was evidence presented showing the employee also had pending a claim against St. Louis Steel at the time of the hearing of his claim against Scullin. There were some admissions made by employee's counsel during oral argument to the effect the claim against St. Louis Steel had been dismissed. Be that as it may, the issue of the liability of St. Louis Steel to the employee is in no way before us and cannot be a part of this judgment. The judgment is reversed and the cause remanded to the Circuit Court with directions to remand the case to the Industrial Commission of this State with instructions that it enter its order denying the award of compensation to the employee from Scullin.

PER CURIAM:

The foregoing opinion by BRADY, C., is adopted as the opinion of this court. The judgment is reversed and the cause remanded to the Circuit Court with directions to remand the case to the Industrial Commission of this State with instructions that it enter its order denying the award of compensation to the employee from Scullin.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.