**Mark S. TUNSTILL, Employee–Respondent,**

v.

**EAGLE SHEET METAL WORKS, Employer,**

and

**Federated Mutual Insurance Company, Insurer–Appellant.**

**Mark S. TUNSTILL, Employee–Appellant,**

v.

**EAGLE SHEET METAL WORKS, Employer,**

and

**Allied Mutual Insurance Company, Insurer–Respondent.**

Nos. 18777, 18794.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 15, 1994.

Eagle Sheet Metal Works and Allied Mut. Ins. Co.

Kenneth T. Walker, Mann, Walter, Burkart, Weathers & Walter, Springfield, for Eagle Sheet Metal Works and Federated Mut. Ins. Co.

FLANIGAN, Presiding Judge.

The sole issue in these two consolidated Workers' Compensation appeals is which of two successive insurers of the same employer is liable for benefits awarded the employee and admittedly due him. Resolution of the issue is governed by the pre–1993 version of 287.063,[1] which read, in pertinent part:

1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists.[2]

2. The employer liable for the compensation in this section provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure.

As used in The Workers' Compensation Law, "Any reference to the employer shall also include his insurer." § 287.030.2.

These are two proceedings under The Workers' Compensation Law, § 287.010, et seq., in which Mark Tunstill is claimant-employee and Eagle Sheet Metal Works ("Eagle") is the employer. Prior to July 1, 1991, Allied Mutual Insurance Company ("Allied Mutual") was the employer's Workers' Compensation insurer. On and after July 1, 1991, Federated Mutual Insurance Company

Jerry A. Harmison, Jr., Miller & Sanford, P.C., Springfield, for Mark S. Tunstill.

Carl E. Lippelman, Andereck, Evans, Milne, Peace & Baumhoer, Springfield, for

---

1. Except where otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S.

2. In 1993, § 287.063.1 was amended, and it now reads:

1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists, subject to the provisions relating to occupational disease due to repetitive motion, as is set forth in subsection 7 of section 287.067, RSMo.

Subsection 7 of § 287.067, enacted in 1993, reads:

7. With regard to occupational disease due to repetitive motion, if the exposure to the repetitive motion which is found to be the cause of the injury is for a period of less than three months and the evidence demonstrates that the exposure to the repetitive motion with a prior employer was the substantial contributing factor to the injury, the prior employer shall be liable for such occupational disease.

("Federated") was the employer's Workers' Compensation insurer. One claim named Allied Mutual as the insurer, and the other claim named Federated as the insurer.

The two proceedings were consolidated for trial before an administrative law judge, who entered a Temporary or Partial Award in each proceeding. One award was in favor of the claimant and against Federated, and the other award was against the claimant and in favor of Allied Mutual. An ·application for review to the Labor and Industrial Relations Commission of Missouri was filed in each proceeding. The Commission entered a "Temporary or Partial Award" affirming the award of the administrative law judge in each proceeding. Separate appeals were taken from the Commission's award[3] by claimant Mark Tunstill and Federated. The two appeals are consolidated in· this court.

There is no factual dispute. Tunstill's employment by Eagle began in 1987. His job duties involved the use of his hands for welding, using a hand snip, using an electric power shear, and carrying large quantities of metal. His right and left wrists were, as stated by the administrative law judge, "involved in repetitive use work." At the time the award was entered, he had not missed any time from his work due to disability, he was still in the employment of Eagle, and the only expense so far incurred was the bill of Dr. Seagrave for services rendered on July 9, 1991. He worked on the morning of July 9, 1991, and the medical appointment, which was scheduled before July 1, took place that afternoon. He did not work during the first week in July 1991 because of a temporary layoff.

The Commission's award included the following:

> This case involves an employee who has carpal tunnel syndrome and an employer who changed workers' compensation insurers effective July 1, 1991. Although the employee suffered symptoms of the occu-

pational disease for a significant period of time prior to July 1, 1991, he was not seen by a physician until shortly after that date. The question posed is which of two insurers is liable for the medical care, future surgery and any resulting disability.

Federated Mutual, the insurer found liable in this instance, argues that there was no causal relationship established between the work done by the employee on or after July 1, 1991, and the employee's carpal tunnel syndrome. Federated further argues that there must be evidence that the work exposure on or after July 1, 1991, either produced or aggravated the employee's problems.

Federated's arguments are very persuasive. Were we to adopt its position, however, our decision would be contrary to the statutory mandate that the Commission apply the "last exposure rule" as stated in § 287.063.2 RSMo 1986, which reads as follows:

> The employer liable for the compensation in this section shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease. for which claim is made regardless of the length of time of such last exposure. (Emphasis in original).

·     ·     ·     ·     ·

In the instant case it is undisputed that the employee worked for the same employer both before and after July 1, 1991. The clear inference from the record as a whole is that the employee's job duties and his symptoms remained the same after July 1, 1991. No witness indicated that the employee's job duties were altered July 1, 1991. The employee worked for the employer on the morning of July 9, 1991. Therefore, it is the Commission's finding that the conditions of the employee's employment were essentially the same or similar to those prevailing prior to July 1,

---

**3.** The Commission's award, on which the instant appeal is based, was a "Temporary or Partial Award," rather than a final award. Federated takes the position that it is not liable for the payment of *any* compensation benefit. The same position was set forth in Federated's application for review to the Commission from the award of

the administrative law judge. This court has jurisdiction of this appeal, even though the award is temporary or partial. *Woodburn v. May Distributing Co., Inc.,* 815 S.W.2d 477, 480–481[1] (Mo.App.1991). See also *Blanford v. Robinett's Motor & Truck Serv.,* 865 S.W.2d 874, 876 (Mo.App.1993).

1991, and such duties, based on the medical testimony, are conducive to the development of bilateral carpal tunnel syndrome.

.    .    .    .    .

[Section 287.063.2] unequivocally states that the length of the exposure to the hazard of the occupational disease makes no difference provided that the same job conditions are present. Therefore, Federated Mutual Insurance Company is the liable insurer in this instance.

.    .    .    .    .

This award against Federated Mutual Insurance Company is only temporary or partial, is subject to further order and the proceedings are continued and shall remain open until a final award can be made.

Federated's appeal from the Commission's award is Appeal No. 18777. Tunstill's appeal from the Commission's award is Appeal No. 18794. The appeals will be treated separately in this opinion.

### No. 18777

Federated's first point reads:

"The findings and Temporary or Partial Award of the Labor and Industrial Relations Commission making Federated Mutual Insurance Company instead of Allied Mutual Insurance Company liable for any past and future benefits due the employee are contrary to § 287.063.2, RSMo, and are not supported by competent and substantial evidence, are not supported by the facts found by the Commission, and are clearly contrary to the overwhelming weight of the evidence because: (a) The employee's hand/wrist condition would have supported a claim prior to Federated assuming coverage on July 1, 1991, because he (1) had experienced his symptoms for two years or longer, (2) had sought to locate a doctor for the condition and (3) had asked the employer in June, 1991, to send him to a doctor. (b) The employee had worked only one-half of a day during Federated's policy period. (c) There was no causal relationship established between work done by the employee on or after July 1, 1991, and his hand condition. (d) There was no evidence that work exposure on or after July 1, 1991, produced or aggravated any of the employee's symptomatology but, rather, the problems the employee experienced with his hands remained the same in July as they had been in June, 1991. (e) There was no evidence that work exposure on or after July 1, 1991, caused the need for bilateral carpal tunnel surgery as recommended by Dr. Seagrave. (f) The employee's condition was the same on June 30, 1991, as it was on July 9, 1991, when diagnosed by Dr. Seagrave. (g) The employee's condition did not worsen after seeing Dr. Seagrave on July 9, 1991."

■ A decision of the Commission in workers' compensation proceedings which is clearly an interpretation or application of law, as distinguished from a determination of fact, is not binding upon this court and falls within its province of review and correction. *West v. Posten Const. Co.,* 804 S.W.2d 743, 744[2] (Mo.banc 1991).

Missouri cases determining which of two successive workers' compensation insurers is liable for the payment of occupational disease benefits include, in chronological order, the following: *King v. St. Louis Steel Casting Co.,* 353 Mo. 400, 182 S.W.2d 560 (1944); *Enyard v. Consolidated Underwriters,* 390 S.W.2d 417 (Mo.App.1965); *White v. Scullin Steel Company,* 435 S.W.2d 711 (Mo.App. 1968); *Ringeisen v. Insulation Services, Inc.,* 539 S.W.2d 621 (Mo.App.1976); *Bollmann v. Certain–Teed Products Corp.,* 651 S.W.2d 613 (Mo.App.1983).

*King, Enyard,* and *White* did not involve the application of § 287.063, for they were proceedings which commenced prior to its enactment. The statute was involved in *Ringeisen* and *Bollmann,* but not in its present form.

In *King, Enyard,* and *Bollmann,* there was only one employer involved, and the issue was which of the successive insurers was liable. In *White,* there were two successive employers involved, but the last employer was not sued and the first was exonerated. In *Ringeisen,* there were two successive employers and both were exonerated.

In *King,* the employee died of silicosis, and his survivors brought a claim for death benefits. The death occurred during the coverage period of Liberty Mutual, the last of three successive insurers. Liberty Mutual had coverage from August 1, 1940, to July 31, 1942. The employee was exposed to silicosis-causing working conditions from 1929 to April 1942 and died on June 3, 1942.

The Commission's award, which held Liberty Mutual liable and exonerated the two prior insurers, was upheld. The court held that there was evidence that the disease was contracted during Liberty Mutual's policy period and that in occupational disease cases liability attached to the employer and insurer as of the date of the disability.

The court said, at 561, that [§ 287.280] requires that every employer "shall insure his entire liability ... with some insurance carrier authorized to insure such liability in this state," that [§ 287.300] makes the insurer "primarily and directly liable ... to the injured employee," and that [§ 287.310] requires such insurance policies to be in accordance with the provisions of the Act.

Adopting with approval language from a New Jersey case, the court said, at 562, "It is disability after exposure in the employer's business that creates the obligation to compensation.... The employer's liability was fixed as of that time and so also the insurance carrier's obligation was assumed as of that date." [4]

In *Enyard,* a silicosis case, the court mentioned § 287.063 but held it was inapplicable, the claim having arisen prior to its enactment. Only one employer, Scullin, was involved, and it had two successive insurers. The employee worked for Scullin from 1936 until 1943 as a sandblaster. He filed his claim in 1960, alleging that his disability began in April 1960. None of his employments after he left Scullin in 1943 exposed him to a dust hazard. Insurer No. 1 had coverage during the entire period of exposure. Insurer No. 2 had coverage on Scullin when the employee's disability began in 1960. Insurer No. 1 was held responsible for the entire award, which was for total and permanent disability.

At 429 the court said:

It is the last *injurious* exposure that forms the basis for a determination of the employer's and insuror's liability when disability occurs, which last injurious exposure usually precedes disability but may be contemporaneous with disability and, of course, it needs no argument to demonstrate that the last injurious exposure arises during the course of claimant's employment with the employer held liable. (Emphasis in original.)

In *White,* the court mentioned § 287.063 but held it was not applicable because the claim arose prior to its enactment. Employee filed a claim against one employer, Scullin, and its insurer. He was employed by Scullin from 1948 until 1954 and was exposed to flying dust. In 1956 he was employed for 28 days by St. Louis Steel, and during that period he was exposed to dust. St. Louis Steel was not a party. The Commission entered an award against Scullin, but that award was reversed on appeal.

The court held that the insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability was liable for the entire compensation. The court said that this so-called "last exposure rule" was a "rule of convenience forced upon the courts by the inexactness of medical science which renders impossible the fixing of a definite time when diseases such as silicosis are actually caused and their progression." *White,* at 716.

When *Ringeisen* was decided, § 287.063, RS 1969, read, in pertinent part:

4. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is

---

4. See, generally, 34 A.L.R. 4th 958—"Workers' Compensation: Liability of Successive Employers for Disease or Condition Allegedly Attributable to Successive Employments." The annotation does not deal with the liability of successive insurers of the same employer. As to the rights between insurers, see Larson, Workmen's Compensation Law, § 95.24—"Last Injurious Exposure Rule in Occupational Diseases."

employed in an occupation or process in which the hazard of the disease exists.

5. The employer liable for the compensation in this section provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure, except in cases of silicosis, asbestosis, loss of hearing due to industrial noise, and radiation disability, in which cases the only employer liable shall be the last employer in whose employment the employee was exposed during a period of ninety days or more to the hazard of such occupational disease, and, in such cases, an exposure during a period of less than ninety days after the effective date of this section shall be held not to be a last exposure.

When *Bollmann* was decided, the subsections were renumbered as 1. and 2.

In *Ringeisen,* an asbestosis case, the claimant was employed by one employer, Insulation Services, for nine days in September 1970. In November 1970, claimant was employed for 26 days by another employer, Owens Corning. During both periods of employment, claimant was exposed to asbestos dust. In 1972, he filed a claim against both employers. The Commission found in favor of both employers. That finding was affirmed.

At 625–626 the court said:

[W]e find no cases in this state which have construed the time limit aspects of sub-sections (4) and (5) of § 287.063. As noted earlier, appellant was not employed by either employer for a period of ninety (90) days. Sub-section (4) provides that any employment, no matter how short, in an occupation in which the hazard of occupational disease exists, shall be deemed to be an exposure to the hazard of occupational disease. *It would seem clear that appellant, under sub-section (4), was exposed to the hazard of asbestosis while working for both Insulation Services and Owens Corning.* (Emphasis added.)

Sub-section (5) goes on to specify which employer shall be held liable for a worker injury due to occupational disease. In its first sentence this sub-section specifies that the *last employer in whose employment a worker was exposed to a hazard of occupational disease shall be the employer who is liable for the compensation.* Thus, sub-section (5) adopted the position which the courts of this state took prior to the enactment of § 287.063 in formulating the "rule of convenience." (Emphasis in original.) (Citing *White* and *King.*)

. . . . .

When the legislature enacted § 287.063 they adopted this "rule of convenience" but they went beyond the rule by providing more explicit liability criteria in those cases involving silicosis, asbestosis, loss of hearing due to industrial noise, and radiation disability. In cases involving these diseases the legislature provided that the *only employer* liable would be the *last employer* with whom a worker was employed for a period of ninety (90) days and with whom the worker was exposed to the hazard of one of these occupational diseases. Any exposure during a period of employment of less than ninety (90) days is not to be deemed a last exposure and the employer is not to be held liable. Stated otherwise, this sub-section provides that the only employer liable shall be the last and that an employer cannot be the last without having employed a worker for ninety (90) days and having exposed the worker to the hazard. If the employee has worked for the same employer for ninety days all that is necessary to bring him under the protection of the statute is that he have been exposed, for a period no matter how brief, to the hazard.

. . . . .

Applying sub-section (5) of the Missouri statute to the facts of the present case, it is obvious that Owens Corning does not meet the description of a "last employer" for they did not employ appellant for a period of ninety (90) days. Nor can Insulation Services be considered as a last employer, for they too did not employ appellant for a period of ninety days.

. . . . .

While we agree that the effect of our reading of sub-section (5) is to deny any coverage to a worker claiming injury due to asbestosis who has not worked for at least one employer for at least ninety days during which time there was an exposure to the hazard, we also find that to be the clear meaning of the statute. The problem posed by the short employment history in this case is one which may require further consideration by the legislature.

In *Bollmann,* an asbestosis case, the claim was filed against one employer who had two successive insurers. Insurer 1 had coverage prior to July 1, 1976. Insurer 2 had coverage on and after July 1, 1976. Employee worked for the employer from 1941 until September 10, 1976, and contracted asbestosis as a result of prolonged exposure to asbestos dust. He first noticed shortness of breath in June 1976. He left work on September 10, 1976, and was unable to work thereafter. He worked from July 1 to September 10, 1976, except for a short vacation. The Commission entered an award against the employer and insurer 2. Insurer 2 appealed and contended that insurer 1 was responsible for the award and that the 90–day exception, with respect to asbestosis in § 287.063, should also apply to the last insurer by reason of § 287.030.2. The court of appeals rejected that contention. The award of the Commission was affirmed.

At 614–616 the court said:

The policy of insurance issued by [insurer 2] to the employer became effective on July 1, 1976. It provides:

"This policy applies only to injury (1) by accident occurring during the policy period, or (2) by disease caused or aggravated by exposure of which the last day of the last exposure in the employment of the insured, to conditions causing the disease occurs during the policy period."

[Insurer 2's] contract with the employer clearly establishes its liability.

[Insurer 2] would contend that the statute being part of the policy circumvents this policy provision; and that insurer should be synonymous with employer *under the exception within § 287.063.2.* (Emphasis added.)

The purpose of the statute under discussion is to determine who among multiple employers is liable for an occupational disease. It does not change the date upon which the condition becomes compensable; it has no reference to insurance carrier status.

. . . . .

Logic and equity require us to hold that the exception in § 287.063.2 does not require that the last insurer should be the insurer of the employer for a period of at least ninety days before its coverage is effective with respect to a compensable claim for asbestosis or other conditions enumerated in the exceptions within § 287.063.2. Rather, the legislature intended that the insurer providing coverage at the time of the employee's injury should indemnify the employer, regardless of when the carrier assumed the risk.

Such a holding does not conflict with § 287.030.2. Reference to the employer in this case also includes its insurer who at the time of the loss was [insurer 2].

The parties agree that carpal tunnel syndrome is an occupational disease where, as here, "a job produces greater exposure." *Prater v. Thorngate, Ltd.,* 761 S.W.2d 226, 230 (Mo.App.1988); see also *Weniger v. Pulitzer Pub. Co.,* 860 S.W.2d 359, 360 (Mo.App. 1993); *Elgersma v. DePaul Health Center,* 829 S.W.2d 35, 36 (Mo.App.1992). "An employee with an occupational disease is not considered 'injured' until the time when the disease causes a compensable injury. This is the time when the disease causes the employee to become disabled and unable to work." *Prater,* at 228[1].

In 1983, the Legislature amended § 287.063 by deleting the 90–day exception dealing with the four enumerated diseases, including silicosis and asbestosis. At the time of the instant proceeding, § 287.063 read as set forth in the opening paragraph of this opinion. This case is one of first impression under the statute in that form. The 1993 amendment of § 287.063.1 is inapplicable to these two claims, the subjects of these consolidated appeals, which antedated it.

■ In construing a statute, this court must consider the words used in the statute in their plain and ordinary meaning in order to ascertain the intent of the lawmakers. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203[2] (Mo.banc 1992). The legislature is presumed not to enact meaningless provisions. When the legislature amends a statute, it is presumed to have intended the amendment to have some effect. *Id.* Where no exceptions are made in terms, none will be made by mere implication or construction. *Rathjen v. Reorganized School Dist. R–11 of Shelby County*, 365 Mo. 518, 284 S.W.2d 516, 522[4] (1955). If the language of the statute is unambiguous, there is no basis for construction of the statute and the court must give effect to the statute as it is written. *State ex rel. Mo. State Bd. v. Southworth*, 704 S.W.2d 219, 224[7] (Mo.banc 1986).

■ Assume the facts as they existed in this case up to and including June 30, 1991. Assume that on July 1, 1991, Tunstill changed employers and went to work for employer No. 2, with its own compensation insurer. Further, assume that the working conditions to which he was exposed under employer No. 2 were identical to those to which he was exposed at Eagle, and that, on July 9, 1991, having worked for employer No. 2 earlier that day, he went to the physician. It is clear that employer No. 2 and its insurer would be liable for the expenses connected with the visit to the physician.

The foregoing hypothetical result is reached because, under § 287.063.1, Tunstill is *conclusively* deemed to have been exposed to the hazards of carpal tunnel syndrome, when, for any length of time, however short, he was employed in a process in which the hazard of the disease existed. The hazard did exist, in the hypothetical case, because the conditions of employer No. 2 are identical to those of Eagle. It is of no moment that only a few hours of exposure were involved under employer No. 2.

Under § 287.063.2, the employer liable would be employer No. 2 because it was the employer in whose employment Tunstill was last exposed to the hazard of the disease "regardless of the length of time of such last exposure," and regardless of any causal con-

nection between that exposure and the contracting of the disease. The insurer of employer No. 2 would be liable. § 287.300. The hypothetical situation differs from the instant facts only in that this case involved a change of insurers on July 1, 1991, but not a change in the employer.

In *King*, the court said that it is disability after exposure in the employer's business that creates the obligation to compensation and that the employer's and its insurer's liability is fixed as of that date. In *Enyard*, the court said it was the last injurious exposure which forms the basis for the liability of the employer and the insurer. Similarly, *White* required a causal connection to the disability in order to hold liable the carrier covering the risk at the time of the most recent exposure. Significantly, *King, Enyard*, and *White* did not involve § 287.063.

In *Ringeisen*, construing what is now § 287.063.1 of the statute in the form applicable here, the court said that the subsection provided that any employment, no matter how short, in an occupation in which the hazard of occupational disease exists, shall be deemed to be an exposure to the hazard of occupational disease and that it was clear that the claimant was *exposed* to the hazard of asbestosis while working for both employers, one for 9 days and one for 26 days.

The pre–1993 version of § 287.063.2, quoted in the first paragraph of this opinion, makes no mention of successive employers. It imposes liability on the employer who is the employer at the time of last exposure, whether that employer was the initial employer or the last of two or more successive employers. In that respect, it differs from the 1993 amendment to § 287.063.1 set forth in footnote 2.

Eagle was the employer of Tunstill on July 9, 1991, when he underwent a few hours of exposure to the working conditions before he saw the physician later that day. It was that exposure, the last exposure, which made Eagle liable for the physician's bill. The mere fact that Tunstill, while in the employ of Eagle, was exposed for several years prior to July 1, 1991, is of no moment because that was not his last exposure. Under § 287.-

063.2, the last exposure is the basis for liability without regard to its length.

Federated's argument is, in essence, that the terminology "was last exposed to the hazard of occupational disease," in § 287.-063.2, should be construed as "was last *injuriously* exposed to the hazard of occupational disease." The statute does not so read, and it may not be so interpreted. Exposure to disease-producing conditions is not synonymous with contraction of the disease. If the legislature wanted to require a causal relation between the exposure and the disability, it would have so stated.

Federated's liability derives from the fact that it was the insurer of Eagle on July 9, 1991, the date of Tunstill's last exposure. The insurer is "primarily and directly liable ... to the injured employee." § 287.300. Federated's insurance policy is required to be in accordance with the provisions of the Act. § 287.310. Federated's first point has no merit.

■ Federated's second point is that the award of the Commission making Federated instead of Allied Mutual liable for any past and future benefits due Tunstill violates the equal protection clauses of Art. 1, § 2 of the Missouri Constitution, and the Fourteenth Amendment of the United States Constitution, in that it does not treat Federated equally with other insurers of the employer and bears no rational relationship to the state's goal of providing compensation benefits to employees injured on the job.

Federated's point is directed to the Commission's award and not to the pre–1993 version of § 287.063.1 and .2 on which the award is based. If the validity of the statute were challenged, the supreme court would have exclusive appellate jurisdiction. Mo. Const. art. 5, § 3.

In support of its second point, Federated quotes the following language from *Carney v. Hanson Oil Co., Inc.,* 690 S.W.2d 404, 407[5, 7] (Mo.banc 1985):

The Equal Protection Clause requires states to treat uniformly all who stand in the same relation to the statute at issue.... In making classifications, the state must proceed upon a rational basis.... The classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.

*Carney* involved a constitutional attack on a statute exempting certain transactions from the registration requirements of the Missouri Securities Act.

■ The Commission is an agency of the state. A board established by an act of the state legislature is an agency of the state whose action is, for purposes of the equal protection clause of the Fourteenth Amendment, state action. *Pennsylvania v. Board of Directors of City Trusts,* 353 U.S. 230, 77 S.Ct. 806, 807[2], 1 L.Ed.2d 792 (1957). The equal protection clause binds the state whether it acts through its legislature, its courts, or its executive or administrative offices. *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 670[1], 98 L.Ed. 866 (1954).

In *Union Carbide Corp. v. Industrial Com'n,* 196 Colo. 56, 581 P.2d 734 (1978), an employer challenged, on equal protection grounds, the validity of a Colorado statute which imposed liability, for occupational disease benefits, upon the employer at the time of the last injurious exposure. All previous employers were absolved of liability. Rejecting the challenge, the court held that the difference in treatment was not based upon suspect classifications or fundamental interests and that the difference in treatment bore a rational relationship to legitimate state objectives. The court said it was proper for the state to protect the public health and safety by enacting legislation which compensates workers and their families for injuries received during employment.

At 739 the court said:

The distinction in the Act between a last employer and previous employers bears a rational relationship to the legislative objective because it provides a clear and reasonable method for an employee and his family to recover initial benefits from at least one employer who has injuriously exposed him to toxic materials. As the United States Supreme Court commented

in approving the Federal Coal Mine Health and Safety Act: "It is enough to say that the Act approaches the problem of cost spreading rationally; whether a broader cost-spreading scheme would have been wiser or more practical under the circumstances is not a question of constitutional dimension." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752.

The Commission's award was in accordance with the requirements of the governing statute. Federated's loss stemmed from the fact that it insured the employer for a benefit arising during the employee's last exposure to the hazard of the occupational disease. Federated was the only insurer at that time. No other insurer was similarly situated. The Commission's award did not violate Federated's equal protection rights. Federated's second point has no merit.

The award of the Labor and Industrial Relations Commission is affirmed.

### No. 18794

As appellant on this appeal, Tunstill asks this court to find that Allied Mutual was the insurer responsible for his workers' compensation benefits if this court ruled that Federated's appeal in Case 18777 was meritorious. This court has rejected Federated's appeal and affirmed the Commission's award in favor of Tunstill and against Federated.

This appeal is now moot and is dismissed.

PREWITT and CROW, JJ., concur.