

# SUPREME COURT OF MISSOURI
## en banc

VINCENT HEGGER (DECEASED), et al.,   )
                                    )
            Appellants,      )
                                    )
v.                                 )       No. SC97993
                                    )
VALLEY FARM DAIRY COMPANY, et al.,   )
                                    )
            Respondents.   )

*Opinion issued February 19, 2020*

## APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

The children of deceased employee Vincent Hegger (Claimants) appeal from a decision of the labor and industrial relations commission denying their claim for enhanced mesothelioma benefits under section 287.200.4(3)(a) of the workers' compensation law.[1] Because Valley Farm did not "elect to accept mesothelioma liability," Claimants are not entitled to the enhanced benefit. The commission's decision is affirmed.

## Background

Vincent Hegger worked for Valley Farm Dairy Company from 1968 until 1984. Valley Farm maintained a workers' compensation insurance policy covering its entire

---

[1] Statutory references are to RSMo Supp. 2013 unless noted otherwise.

liability for occupational disease during Hegger's employment. Valley Farm ceased operations in 1998.

Hegger's employment with Valley Farm consisted mainly of servicing industrial machinery. This work exposed him to asbestos gaskets, asbestos insulation, and other products capable of producing inhalable asbestos fibers. Hegger was diagnosed in 2014 with mesothelioma caused by toxic exposure to asbestos during his employment with Valley Farm. He died from the disease in 2015.

Prior to his death, Hegger and his two adult children filed a claim for workers' compensation benefits. Section 287.200.4(1) provides:

> For all claims filed on or after [January 1, 2014,] for occupational diseases due to toxic exposure which result in a permanent total disability or death, benefits in this chapter shall be provided as follows:
> (1) Notwithstanding any provision of law to the contrary, such amount as due to the employee during said employee's life as provided for under this chapter for an award of permanent total disability and death, except such amount shall only be paid when benefits under subdivisions (2) and (3) of this subsection have been exhausted[.]

In accordance with subdivision 287.200.4(1), Claimants specifically sought enhanced benefits under subdivision 287.200.4(3)(a) of "an additional amount of three hundred percent of the state's average weekly wage for two hundred twelve weeks."[2] Following a

---

[2] The commission's decision provides, "The parties stipulated the only benefits at issue are the 'enhanced benefits' in § 287.200.4(3)." The record does not make it clear whether this is because the parties already have stipulated to or otherwise paid the amounts due under section 287.200.4(1) or whether, for reasons not in the record, those amounts are not sought. In any event, as the claim for these regular benefits was not put before the commission, it is not before this Court on appeal of the commission's decision. The Court takes no position whether Claimants would be entitled to the standard benefits as provided in this provision.

2

hearing, an administrative law judge denied the claim. Claimants appealed to the labor and industrial relations commission, which affirmed the denial of benefits. The commission held an employer that ceased operations 16 years before section 287.200.4(3)(a) took effect could not have elected to accept enhanced liability under that section and Claimants, therefore, were not entitled to recover the enhanced benefit. Claimants appealed the commission's decision to the court of appeals. This Court granted transfer after opinion by the court of appeals pursuant to Rule 83.04.[3]

## Standard of Review

This Court reviews the commission's decision to determine whether it is "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, § 18. "A decision of the Commission will be disturbed only if (1) the [c]ommission acted without authority or in excess of its authority; (2) the award was procured by fraud; (3) the facts do not support the award; or (4) there was not sufficient, competent evidence to justify the award." *Accident Fund Ins. Co. v. Casey*, 550 S.W.3d 76, 79 (Mo. banc 2018); § 287.495.1(1)-(4), RSMo 2000. The interpretation of the workers' compensation law is a question of law that is reviewed *de novo*. *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 67 (Mo. banc 2018).

## Analysis

When applicable, Missouri's workers' compensation law provides the exclusive remedy by which injured workers may seek to recover benefits for injuries caused by

---

[3] References are to Missouri Supreme Court Rules (2019) unless noted otherwise.

accidents suffered in the course of their employment. § 287.120.2. Prior to 2014, there was confusion among the courts over whether the exclusivity provisions of the workers' compensation law also applied to occupational diseases. *Compare State ex rel. KCP&L Greater Mo. Operations Co. v. Cook*, 353 S.W.3d 14, 18-19 (Mo. App. 2011) (holding the exclusivity provisions were limited to injuries or death caused by an "accident" and occupational diseases do not arise out of an "accident"), *with Peters v. Treasurer of Mo.*, 404 S.W.3d 322, 327 (Mo. App. 2012) (holding the term "injury" in the Act encompassed occupational diseases).

The general assembly amended the workers' compensation law in 2013 to provide the exclusive remedy for occupational diseases caused by toxic exposure in the workplace in some instances. § 287.200.4(3)(b). The amended statute provides:

> (3) In cases where occupational diseases due to toxic exposure are diagnosed to be mesothelioma:
>
> (a) For employers that have **elected to accept mesothelioma liability** under this subsection, an additional amount of three hundred percent of the state's average weekly wage for two hundred twelve weeks shall be paid by the employer or group of employers such employer is a member of. **Employers that elect to accept mesothelioma liability under this subsection may do so by either insuring their liability**, by qualifying as a self-insurer, or by becoming a member of a group insurance pool. A group of employers may enter into an agreement to pool their liabilities under this subsection. If such group is joined, individual members shall not be required to qualify as individual self-insures. Such group shall comply with section 287.233. In order for an employer to make such an election, the employer shall provide the department with notice of such an election in a manner established by the department. The provisions of this paragraph shall expire on December 31, 2038.

§ 287.200.4(3)(a) (emphasis added). Employers that elect to accept enhanced liability under this subsection are not subject to civil liability for occupational disease caused by

4

toxic exposure. *See* § 287.120.2. But if an employer does not elect to accept enhanced mesothelioma liability, "then the exclusive remedy provisions under section 287.120 shall not apply to such liability." § 287.200.4(3)(b).

## A. Valley Farm could not elect to accept enhanced liability

This case requires the Court to determine whether a now-defunct employer can "elect to accept mesothelioma liability" under a statute that did not take effect until 16 years after the company ceased operations. Claimants argue the commission erred in determining Valley Farm did not elect to accept liability for the enhanced benefit. Claimants point to section 287.200.4(3)(a), which provides an employer may elect to accept enhanced mesothelioma liability by "insuring their liability." Claimants and the dissenting opinion argue that, because Valley Farm maintained an insurance policy that insured its entire workers' compensation liability during the time it employed Hegger, then Valley Farm elected to accept mesothelioma liability under the plain language of the statute. The commission rejected this argument, finding that electing to accept enhanced liability under section 287.200.4(3)(a) requires employers to take affirmative action with respect to the enhanced benefit and that simply maintaining a workers' compensation insurance policy, which was secured prior to 2014 and did not contemplate coverage for the enhanced benefit, was insufficient. Claimants and the dissenting opinion contend the commission erred in this respect, arguing the plain language of the statute allows recovery

5

of the enhanced benefit so long as the employer at the time of last exposure[4] simply maintained an insurance policy that insured the company's entire liability for occupational disease.

The commission did not err in finding that electing to accept enhanced mesothelioma liability under section 287.200.4(3)(a) requires an affirmative act by the employer. The term "elect" is the operative verb in section 287.200.4(3)(a), but it is not defined in the workers' compensation law.[5] When a term is not defined by statute, this Court will give the term its "plain and ordinary meaning as derived from the dictionary." *Mo. Pub. Serv. Comm'n v. Union Elec. Co.*, 552 S.W.3d 532, 541 (Mo. banc 2018).

The dictionary defines the term "elect" to mean "to make a selection" or "to choose." Webster's New Int'l Dictionary 731 (3d ed. 2002). Both selecting and choosing require an affirmative act by the one making the selection or doing the choosing. Giving these definitions their plain and ordinary meaning in the context of section 287.200.4(3)(a) indicates the legislature intended to require employers to take some affirmative action with

---

[4] "Section 287.063.2, deemed the 'last exposure rule,' provides the 'employer liable for [workers' compensation benefits] shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease.'" *Casey*, 550 S.W.3d at 80 (quoting § 287.063.2).

[5] Claimants focus on the term "insuring" in section 287.200.4(3)(a) ("Employers that elect to accept mesothelioma liability under this subsection may do so by . . . **insuring** their liability." (emphasis added)). Claimants argue the term "insuring" should control over the term "elect." But Claimants' reliance on the term "insuring" is misplaced because that term does not operate as a verb in section 287.200.4(3)(a). It stands instead as a gerund, the noun form of the verb "to insure," which operates as the object of the preposition "by." *See SSM Cardinal Glennon Children's Hosp. v. State*, 68 S.W.3d 412, 416 (Mo. banc 2002); *see also* Webster's New Int'l Dictionary 952 (3d ed. 2002). The operative verb— the action the employer must take to accept enhanced liability—is "elect."

6

respect to the enhanced benefits to accept enhanced mesothelioma liability. It is axiomatic that a business entity that no longer exists cannot affirmatively select or choose to do anything. Because Valley Farm ceased operations in 1998, and the enhanced benefit did not exist until 2014, Valley Farm could not affirmatively elect to accept liability for the enhanced benefit under section 287.200.4(3)(a).

**B. *Casey* does not support Claimants' position**

Claimants point to this Court's decision in *Casey* in support of their position. In *Casey*, employee Casey worked for a construction contractor from 1984 to 1990. 550 S.W.3d at 78. This work exposed Casey to asbestos in various forms. *Id*. Casey was diagnosed with mesothelioma in 2014 and eventually died from the disease. *Id*. at 79. Before his death, Casey filed a claim for workers' compensation benefits against his last employer. *Id*. That employer was still in business when Casey filed his claim. *See id.* At the time of Casey's claim, the employer was covered under a policy of insurance that included an endorsement titled "Missouri Notification of Additional Mesothelioma Benefits." *Id*. That endorsement provided in pertinent part:

> Section 287.200.4, subdivision (3), of the Missouri Revised Statutes provides additional benefits in the case of occupational diseases due to toxic exposure that are diagnosed to be mesothelioma and result in permanent total disability or death. **Your policy provides insurance for these additional benefits**.

*Id*. (emphasis added). This Court held, "Employer elected to accept mesothelioma liability under section 287.200.4 . . . by selecting a policy that explicitly contemplated enhanced compensation for mesothelioma claims." *Id*. at 80.

7

It is true that this Court, in *Casey*, held the employer elected to accept enhanced mesothelioma liability under section 287.200.4 by insuring against such liability. But the Court reached this result because the employer affirmatively purchased insurance that expressly contemplated coverage for the enhanced benefit after section 287.200.4(3)(a) took effect. *See id*. The same is not true of Valley Farm. Although Valley Farm was covered by a policy of insurance against its "entire" workers' compensation liability during Hegger's employment, Valley Farm's policy did not expressly contemplate coverage for the enhanced benefit provided by section 287.200.4(3)(a). Indeed, Valley Farm's policy could not have contemplated such coverage because that enhanced benefit did not exist until 16 years after Valley Farm ceased operations. *See id.* (explaining, "Missouri's workers' compensation law was amended in 2014 to provide enhanced compensation for individuals diagnosed with occupational diseases such as mesothelioma").

**C. Now-defunct employers are not deemed to have elected to accept enhanced liability under section 287.200.4(3)(a) solely by virtue of having workers' compensation insurance at the time of an employee's last exposure to asbestos**

Claimants urge this Court to find that section 287.200.4(3)(a) creates a "default" rule in claims against defunct employers facing claims for workers' compensation benefits for occupational disease caused by toxic exposure. Claimants argue defunct employers should be deemed to have elected to accept liability for the enhanced benefit provided by section 287.200.4(3)(a) so long as the employer insured its entire workers' compensation liability at the time of the employee's last exposure. Accepting Claimants' position, however, would require a reading of section 287.200.4(3)(a) unsupported by the plain

8

language of this provision. In fact, the plain language of section 287.200.4(3)(a) causes employers to default to the opposite position because electing to accept enhanced liability requires employers to take affirmative action. "This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Peters v. Wady Indus. Inc.*, 489 S.W.3d 784, 789 (Mo. banc 2016).

Section 287.200.4(3)(a) speaks in terms of employers "that have elected to accept" enhanced liability for mesothelioma under this subsection. This plain language, as explained above, requires employers to make an affirmative election under section 287.200.4(3)(a) to accept liability for the enhanced benefit. If the employer does not make such an election, the employer has rejected enhanced mesothelioma liability under the plain language of the statute. The default position under section 287.200.4(3)(a), therefore, is that employers reject enhanced mesothelioma liability if they do not affirmatively elect to accept it. In that default position, "the exclusive remedy provisions under section 287.120 shall not apply to such liability." § 287.200.4(3)(b). An Employer's default status under section 287.200.4(3)(a) changes only if the employer affirmatively elects to accept the enhanced liability.

The Court, accordingly, holds now-defunct employers facing claims for workers' compensation benefits for mesothelioma caused by toxic exposure are not deemed to have elected to accept enhanced liability under section 287.200.4(3)(a) solely by virtue of having workers' compensation coverage at the time of an employee's last exposure to asbestos. This Court holds the plain language of section 287.200.4(3)(a) operates such that employers that do not make the requisite affirmative election to accept liability for the

9

enhanced benefit are deemed to reject such liability under 287.200.4(3)(b) and thereby are exposed to civil liability outside the context of the workers' compensation statutes.

### Conclusion

Because Valley Farm ceased operations 16 years before the legislature created the enhanced benefit provided by section 287.200.4(3)(a), Valley Farm could not affirmatively elect to accept liability for the enhanced benefit as required under the statute. Claimants are not entitled to the enhanced benefit because Valley Farm did not elect to accept such liability. The commission's decision is affirmed.

_____
W. Brent Powell, Judge

Wilson, Russell, Stith, and Fischer, JJ., concur;
Draper, C.J., dissents in separate opinion filed;
Breckenridge, J., concurs in opinion of Draper, C.J.



# SUPREME COURT OF MISSOURI
## en banc

VINCENT HEGGER (DECEASED), et al.,   )
                                 )
            Appellants,      )
                                 )
v.                                  )        No. SC97993
                                 )
VALLEY FARM DAIRY COMPANY, et al.,   )
                                 )
            Respondents.    )

## DISSENTING OPINION

I respectfully dissent from the principal opinion. I believe Valley Farm Dairy Company (hereinafter, "Valley Farm") made an affirmative decision to purchase workers' compensation insurance, which, as a matter of law, covered future occupational injuries. Once Vincent Hegger (hereinafter, "Hegger") suffered his occupational injury, his compensation should have been that to which he was statutorily entitled at the time of his injury rather than when he was exposed to asbestos. I would reverse the Labor and Industrial Relations Commission's (hereinafter, "Commission") decision and remand this case for further proceedings.

Hegger began working for Valley Farm in 1968 and remained in its employ until sometime in 1984. During the course of his employment with Valley Farm, Hegger was exposed to asbestos.

As required by law, Valley Farm maintained workers' compensation insurance. Valley Farm asserts the insurance it procured covered its entire liability for any employee's future occupational disease. During Hegger's employment with Valley Farm, there were at least two different insurance companies providing Valley Farm coverage.

Hegger was diagnosed with mesothelioma in 2014 due to his regular, repeated exposure to asbestos at Valley Farm.[1] Hegger and two of his children filed a claim for workers' compensation benefits. Hegger died in 2015 due to his occupational injury.

The principal opinion denies Hegger enhanced mesothelioma benefits, finding Valley Farm could not elect mesothelioma liability pursuant to section 287.200.4(3)(a).[2] I disagree.

Every employer is required to insure its entire liability under the workers' compensation law. Section 287.280.1. To meet its obligation, Valley Farm maintained workers' compensation insurance through multiple insurance companies during Hegger's

---

[1] Mesothelioma is an asbestos-related disease, which is a rare and aggressive form of cancer. Asbestos-related diseases have a long latency period, which typically take decades to develop and are traceable to workplace exposure. Exposed workers also endanger their family members because the asbestos fibers remain on clothing and tools brought home after the work day. Due to this exposure, family members deal with secondhand asbestos exposure concerns and bear an elevated risk of developing asbestos-related diseases.

[2] Statutory references are to RSMo Supp. 2013, unless otherwise indicated.

2

employment. Pursuant to the last exposure rule, Valley Farm would have procured insurance policies that would insure it "regardless of the length of time" wherein an occupational disease would manifest and be compensable. *See* Section 287.063.2, RSMo Supp. 1983.

While Hegger's date of last exposure to asbestos at Valley Farm is not in the record, it is undeniable his date of injury was in 2014, when he was diagnosed with mesothelioma. Compensation under the workers' compensation law is not made when a claimant is last exposed to asbestos, but rather when the claimant has been injured and when that injury is diagnosed. *McGhee v. W.R. Grace & Co.*, 312 S.W.3d 447, 456 (Mo. App. S.D. 2010). "Exposure to disease-producing conditions is not synonymous with contraction of the disease." *Tunstill v. Eagle Sheet Metal Works*, 870 S.W.2d 264, 272 (Mo. App. S.D. 1994).

Currently, the workers' compensation law provides specific, enhanced compensation for workers who are injured due to mesothelioma. Section 287.200.4(3)(a) sets forth three exclusive means to demonstrate an employer "elect[s] to accept" mesothelioma liability. To do so, an employer may either: (1) insure its liability; (2) qualify as a self-insurer; or (3) become a member of a group insurance pool. *Id*.

Valley Farm knew it could be liable for a future occupational disease, and it affirmatively purchased insurance to mitigate its future liability. As an injured employee, Hegger should be provided compensation for which he is statutorily entitled to *at the time of his injury*.

I would find Valley Farm made an affirmative election to provide Hegger workers' compensation coverage at the point in the future he was injured. Hegger should be provided enhanced mesothelioma benefits. Accordingly, I would reverse and remand the Commission's decision. Upon remand, I would instruct the Commission to determine which insurer provided Valley Farm coverage when Hegger was last exposed to asbestos.

_____
GEORGE W. DRAPER III
CHIEF JUSTICE

4