Kathryn Deanne **PRATER**,
Claimant–Respondent,

v.

**THORNGATE, LTD.,**
**Employer–Appellant.**

No. 54178.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Nov. 15, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 14, 1988.

Kenneth C. McManaman, Cape Girardeau, for employer-appellant.

Donald P. Thomasson, Cape Girardeau, for claimant-respondent.

DOWD, Presiding Judge.

Employer, Thorngate LTD., appeals the Labor and Industrial Relations Commission's award on employee Kathryn Prater's claim for workers' compensation due to an occupational disease. Affirmed.

Kathryn Prater was employed as a sewing machine operator at Thorngate, LTD from December 6, 1983 to March 31, 1986. Her job, sewing collars onto men's sports coats, required her to exert downward pressure on three layers of fabric while guiding them through the sewing machine. She processed one collar every 1.6 to 1.8 minutes for 40 hours per week. Prater had performed a similar job at Ralph Edwards Sportswear from 1969 to 1973.

In December of 1984, Prater began to experience numbness in her hands and arms. The numbness increased and was accompanied by growing pain. In May 1985, Dr. Griffith diagnosed Prater as suffering from bi-lateral carpal tunnel syndrome, a "condition resulting from pressure on the median nerve ... characterized

by pain, tingling, burning, numbness, etc. ... in the skin of the palm, fingers, wrists, etc." Attorney's Dictionary of Medicine p. C–51 (1984). Not knowing if this was a work-related condition, Prater filed a claim for group benefits with Thorngate's insurer, Amalgamated Life Insurance Co., on July 10, 1985.

On July 11, 1985, Dr. Thorpe operated on Prater and she returned to work in September of 1985. The pain returned and she underwent a second operation in October 1985. Although Dr. Thorpe advised her to seek a job "that does not require repetitive movements," Prater resumed her work at Thorngate in December. On April 1, 1986, Prater was forced to quit her job because the pain was too intense.

Prater had filed a claim for workers' compensation in mid-October of 1985, stating that her carpal tunnel syndrome was a direct result of her employment at Thorngate. Employer denied this claim and a hearing before the Administrative Law Judge ensued on June 26, 1986. The only witnesses at the hearing were Prater and her mother. All other evidence, including medical, was entered via letters, doctors' notes, bills, records, and claim forms. An October 14, 1985 letter from Dr. Thorpe to Thorngate identified Prater's illness as "a direct result of performing her job." Dr. Thorpe also expressed this conclusion on a July 29, 1986 claim form to Amalgamated Life Insurance Company.

The Administrative Law Judge found that Prater performed her duties in the manner her employer required and that the aspects of her job were the same as those of similarly employed persons. He then found that her "carpal tunnel syndrome was attributable to naturally progressive physical effects of her employment and was not the result of an incidence of occupational disease." Thus, he denied the claim without addressing the issues of notice, disability, medical expenses or causal relationship.

Prater appealed this decision to the Commission which reversed the Administrative Law Judge's decision. The Commission noted and applied the test designated in a recent carpal tunnel case, *Jackson v. Risby Pallet and Lumber Co.*, 736 S.W.2d 575 (Mo.App.1987). It found that Prater's duties at Thorngate "created an exposure to the disease of carpal tunnel syndrome which was greater than that which affects the public generally" and that there was a recognizable link between the disease and her job. The Commission then awarded Prater compensation for medical expenses, temporary total disability and permanent partial disability. Thorngate now appeals this decision.

On appeal of the Commission's final award, we only review questions of law. § 287.495.1, RSMo 1986. We will not disturb the award unless it is unsupported by substantial evidence or clearly contrary to the weight of the evidence. *Sellers v. Trans World Airlines, Inc.*, 752 S.W.2d 413, 415 (Mo.App.1988). Credibility, resolution of evidentiary conflicts, weight of evidence, and factual inferences are all issues vested in the Commission. *Tester v. Autco Distributing, Inc.*, 749 S.W.2d 21, 22 (Mo. App.1988). With this standard in mind, we turn to the points on appeal.

Employer first claims that Prater cannot recover because she failed to give proper notice of her condition. Section 287.420, RSMo 1986, provides as follows:

No proceedings for compensation under this chapter shall be maintained unless written notice of the time, place and nature of the injury ... have been given to the employer as soon as practicable after the happening thereof but not later than thirty days after the accident....

Employer states that Prater was required to give notice thirty days after her problems began in December 1984.

We agree with the Commission's holding, if not its reasoning, that the notice statute does not bar recovery in this case. An employee with an occupational disease is not considered "injured" until the time when the disease causes a compensable injury. *Renfro v. Pittsburgh Plate Glass Co.*, 235 Mo.App. 226, 130 S.W.2d 165, 171 (1939). This is the time when the disease causes the employee to become disabled and unable to work. *Sheehan v. Spring-*

*field Seed & Floral,* 733 S.W.2d 795, 798 (Mo.App.1987). In Prater's case, this time was July of 1985, when the need for surgery manifested and she was unable to work. A July 29, 1985 letter from Dr. Thorpe informed Thorngate of Prater's condition and employer's brief admits that it was also notified in July, via the personnel manager, that Prater's condition was work-related. Thus, Prater gave sufficient notice under section 287.420.

We have doubts, however, whether section 287.420 even applies to cases of occupational disease. The statute uses the terms "injury" and "accident." "Injury" is defined as "in no case except as specifically provided" including occupational disease. § 287.020.3, RSMo 1986. "Accident" refers to a sudden or violent event, § 287.020.2, RSMo 1986, and does not mesh with the definition of occupational disease, § 287.067.1, RSMo 1986. Thus, the notice statute does not facially apply to occupational diseases. In addition, occupational disease does not fit under the purpose of the notice statute, which is to "give the employer a timely opportunity to investigate the facts as to whether an accident did occur, and, if it did, to promptly furnish medical attention to the employee to minimize the injury." *Klopstein v. Schroll House Moving Co.,* 425 S.W.2d 498, 503 (Mo.App.1968).

The early cases which applied the notice statute to occupational disease cases did so to correct the legislature's apparent ommission to rewrite the ministerial provisions of the workers' compensation code to include this newly-allowed cause. *See King v. St. Louis Steel v. Casting Co.,* 353 Mo. 400, 182 S.W.2d 560, 561 (1944). Since that time, the legislature has promulgated a statute of limitations specifically for occupational diseases, § 287.063.3, RSMo 1986, but has failed to add a comparable notice statute or to amend the existing statute. This leads us to question the propriety of applying the notice statute to occupational disease, but as determination of the issue is not necessary to the outcome of this case, we refrain from making a finding and hope that the legislature will clarify the problem.

Employer's second point is a shotgun attack on the Commission's finding of occupational disease. In essence, employer claims that Prater's injury was not an occupational disease but an ordinary disease of life and not compensable.

Section 287.067 defines occupational disease as:

a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the diseases follow as an incident of an occupational disease as defined in this section. A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind upon consideration of all the circumstances a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workers would have been equally exposed outside of the employment.

The Commission placed Prater's condition within this definition on the authority of *Jackson v. Risby Pallet and Lumber Co.,* 736 S.W.2d 575 (Mo.App.1987). *Jackson* was in turn based on *Collins v. Neevel Luggage Manufacturing Co.,* 481 S.W.2d 548 (Mo.App.1972).

In *Collins,* the Western District addressed a case of bi-lateral carpal tunnel syndrome in a luggage assembly line worker. Mrs. Collins began to develop numbness and pain in her hands after two weeks of attaching valances to suitcases. This job required her "to bend her fingers toward the palms of her hands, [and] exert pressure downward and inward," and to flex her wrists once every second. *Id.* at 549. Her expert testified "that repetitive flexion of the wrist and hand under pressure was a form of trauma sufficient either

to cause or contribute to the development of carpal tunnel syndrome." *Id.* at 550.

The court addressed the issue of whether carpal tunnel syndrome is an ordinary disease of life and held that although it occurs in the general public, it can be considered an occupational disease where a job produces greater exposure. "[T]he distinction here is that, whereas people use their hands and wrists frequently every day in and out of occupations, their exposure to carpal tunnel syndrome is casual compared to the massive exposure to which a workman is subjected who is required to perform an occupational duty involving identical hand and wrist movements" with much greater frequency and for a sustained duration. *Id.* at 554.

The Southern District accepted this reasoning in *Jackson,* where it reversed an administrative decision that claimant's carpal tunnel syndrome was not an occupational disease. The court derived a two part test from Collins: (1) was there an exposure to the disease which was greater than or different from that which affects the public generally, and (2) was there a recognizable link between the disease and some distinctive feature of the claimant's job which is common to all jobs of that sort. 736 S.W.2d at 578.

Employer attempts to add the requirement that a compensable occupational disease must be contracted while performing a task that is different from that for which the employee was hired. Although this was the factual situation in *Collins,* we do not believe it had any effect on the decision. The fact that the *Jackson* court failed to mention this item supports our finding.

■ Correctly applying the above law, the Commission had sufficient evidence to find for Prater. The Administrative Law Judge made, and the Commission adopted, findings that Prater performed her job in the manner Thorngate prescribed and that the mechanical aspects of her job were common to those of the other sewing machine operators. The judge also found that Prater's disease "was attributable to naturally progressive physical effects of her employment." Prater submitted Dr. Thorpe's uncontradicted medical opinion that her disease was related to her job and a second medical opinion by Dr. Conrad supported the causal connection. There was sufficient evidence for the Commission to find increased exposure and a recognizable link between Prater's job and her disease. These factual findings support a holding of occupational disease and under our standard of review, as stated above, we must affirm that holding.

■ Employer makes a separate attack on the finding of medical causation, stating that Prater did not submit sufficient evidence to meet her burden of proof. A claimant must submit an expert medical opinion establishing a probability that working conditions caused the disease, although they need not be the sole cause. *Sheehan v. Springfield Seed & Floral, Inc.,* 733 S.W.2d 795, 797 (Mo.App.1987). Even where the causes of the disease are indeterminate, however, a single medical opinion relating the disease to the job is sufficient to support a decision for the employee. *Skinner v. Dawson Metal Products,* 575 S.W.2d 935, 943 (Mo.App.1978). It appears that a doctor's written report is adequate for this purpose; oral testimony at the hearing is not required. *See Reece v. St. Joseph Lead Company,* 465 S.W.2d 849, 852 (Mo.App.1971). Prater submitted a medical opinion relating her disease to her job. The evidence did not develop any other possible causes. There was enough evidence to support a positive finding of causation.

■ Employer challenges the award of medical expenses on the grounds that Prater did not introduce any evidence of necessity, but fails to cite any authority or develop any but a cursory argument for the proposition that a claimant must produce specific evidence of necessity. While the Commission should only award expenses reasonably and necessarily incurred, *Wiedower v. ACF Industries, Inc.,* 657 S.W.2d 71, 75 (Mo.App.1983), we fail to see why that conclusion could not be inferred from the evidence before the court. Point denied.

Finally, employer challenges the award of permanent partial disability on the ground that it was excessive, unreasonable, and against the weight of the evidence. Employer bases its argument on the discrepancy between the two disability ratings submitted at the hearing and the Commission's failure to adhere to either. Dr. Thorpe rated Prater's disability at 10% on each wrist. Dr. Conrad, who examined Prater on May 28, 1986, at the request of her attorney, rated her at 30% on the left wrist and 20% on the right wrist. The Commission awarded 20% on the left and 15% on the right.

The extent and percentage of disability is a finding of fact within the Commission's discretion and the Commission is not bound by the experts' exact percentages. *Quinlan v. Incarnate Word Hosp.,* 714 S.W.2d 237, 238 (Mo.App.1986). We defer to the Commission's resolution of evidentiary conflicts. *Modlin v. Sun Mark, Inc.,* 699 S.W.2d 5, 7 (Mo.App.1985). The decision was neither unreasonable nor against the weight of the evidence.

The decision of the Industrial Relations Commission is affirmed on all counts.

PUDLOWSKI, C.J., and CRIST, J., concur.