**Norman L. ENDICOTT, Jr., Respondent,**

v.

**DISPLAY TECHNOLOGIES, INC., Appellant,**

**and**

**ASAP Services and ADECCO Employment Services, Inc., Respondents,**

**and**

**Graphic Technologies, Inc., Appellant.**

**No. SC 84044.**

Supreme Court of Missouri, En Banc.

June 25, 2002.

William F. Ringer, Clinton D. Collier, Michael L. Wilson, Kansas City, for Appellant.

Doris J. House, Joplin, Steve McManus, Eric T. Lanham, Kansas City, William C. Love, Karen L. Johnson, Springfield, for Respondents.

DUANE BENTON, Judge.

The Labor and Industrial Relations Commission awarded workers' compensation benefits against two employers, based on the dates of diagnosis of Norman Endicott's diseases. One employer—Display Technologies, Inc.—argues it is not liable because it was not the last employer to

expose Endicott to the hazard of his occupational diseases. The other employer—Graphic Technologies, Inc.—claims that it is not liable for two of Endicott's diseases based on the dates of diagnosis, nor for his third disease (diagnosed during employment with GTI) because Endicott did not give sufficient notice. After opinion by the Court of Appeals, this Court granted transfer. *Mo. Const. art. V, section 10.* Reversed and remanded.

## I.

Endicott seeks benefits from four employers for three occupational diseases: bilateral carpal tunnel syndrome, right elbow bursitis, and bilateral thoracic outlet syndrome. Endicott worked for Display Tech from 1981 to January 1998, for ASAP Services, Inc. from February to March 1998, for ADECCO Employment Services, Inc. from April to July 1998, and for GTI from July 1998 to March 2000.

At Display Tech, Endicott built and tested computer monitors, requiring constant repetitive use of his upper extremities. This work caused pain in his hands, wrists, forearms, right elbow, shoulders, and neck. On July 1993, he was diagnosed with mild-to-moderate right carpal tunnel syndrome, and mild left carpal tunnel syndrome. On June 1994, Endicott and Display Tech settled a claim based on an approximate disability of ten percent of the wrist.

For the following three years, Endicott was a supervisor, which did not require repetitive handwork. While Display Tech was going out of business, he helped disassemble the plant, working 72–hour weeks from October 1997 to January 1998. The problems with his upper extremities reappeared.

In February and March, Endicott worked for ASAP on a job similar to that at Display Tech. His problems continued. On March 2, he was diagnosed with right elbow bursitis.

On April 22, Endicott began employment with ADECCO, which assigned him to GTI for duties including repetitive action. He became a permanent employee of GTI on July 17.

On November 2, 1998, Endicott filed for compensation. He alleged an onset date of December 1997, the time of the disassembly work when his symptoms were most painful. On January 25, 1999, he was diagnosed with bilateral thoracic outlet syndrome, and later amended his claim.

At the hearing on Endicott's claim, his doctor opined that his conditions were caused by repeated minor trauma to the upper extremities during employment. His doctor testified that Endicott's employment with Display Tech, ASAP and GTI "were each capable of causing the problems that he exhibited, but it was [Endicott's] allegation that most of them occurred while he worked for Display Tech and that some worsening occurred while working for ASAP and that he seemed to reach a steady state and did not have additional worsening when he worked for GTI." Notably, the Commission adopted the finding that Endicott's employment with each employer was a substantial contributing factor to his injuries. Yet, by history, his doctor concluded that Endicott's work at Display Tech was the most substantial contributing factor, and in effect the cause of his injuries.

The Administrative Law Judge held GTI solely liable under the last exposure rule in section 287.063.[1] Partly reversing, the Commission used the dates of diagnosis—not the date of the claim—as the assessment date. Thus, Display Tech was liable

---

1. All statutory references are to RSMo 1994.

for two diseases—bilateral carpal tunnel syndrome and right elbow bursitis—diagnosed during (and shortly after) employment with Display Tech. GTI was liable for only one disease—bilateral thoracic outlet syndrome—first diagnosed while Endicott worked for GTI.

■ This Court defers to the Commission on issues of fact. *Section 287.495.* However, questions of law are reviewed de novo. *Id.; Johnson v. Denton,* 911 S.W.2d 286, 287 (Mo. banc 1995).

## II.

■ At issue are subsections 1 and 2 of section 287.063:

1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists, subject to the provisions relating to occupational disease due to repetitive motion, as is set forth in subsection 7 of section 287.067, RSMo.

2. The employer liable for the compensation in this section provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure.

This last exposure rule is not a rule of causation. *Johnson,* 911 S.W.2d at 288. Rather, as the starting point, the last employer before the date of claim is liable if that employer exposed the employee to the hazard of the occupational disease. *Id.; Maxon v. Leggett & Platt,* 9 S.W.3d 725, 730 (Mo.App.2000).

■ At GTI, Endicott's duties included repetitive motion, the hazard of his occupational diseases. Because GTI was the last

employer to expose him to this hazard, GTI is solely liable.

GTI attempts to invoke the exception in subsection 287.067.7:

With regard to occupational disease due to repetitive motion, if the exposure to the repetitive motion which is found to be the cause of the injury is for a period of less than three months and the evidence demonstrates that the exposure to the repetitive motion with a prior employer was the substantial contributing factor to the injury, the prior employer shall be liable for such occupational disease.

As a turning point, this provision shifts liability to a prior employer *only* if the employee's exposure at a later employer is less than three months *and* exposure with a prior employer was the substantial contributing factor to the injury.

GTI asserts that because two of Endicott's diseases were diagnosed during (and shortly after) employment with Display Tech, Display Tech is liable for them. GTI interprets the phrase "which is found to be the cause of the injury" to fix liability at the time the disease is diagnosed.

■ In fact, the phrase "which is found to be the cause of the injury" modifies the subject "the exposure to the repetitive motion." If this exposure with an employer is for more than three months, that employer—as in this case—may not invoke the exception in section 287.067.7. Cases holding otherwise are overruled. *Cuba v. Jon Thomas Salons, Inc.,* 33 S.W.3d 542, 546 (Mo.App.2000); *Arbeiter v. National Super Markets, Inc.,* 990 S.W.2d 142, 145–46 (Mo.App.1999).

GTI alternatively contends that if Endicott had notified it of his diseases when first exposed at GTI, GTI could have limited his exposure to less than three months, avoiding liability under section 287.067.7.

GTI cites dicta implying that an employee must give notice of an occupational disease: "It seems clear an employer is entitled to a notice but there are no existing guidelines to define the nature or timeliness for notice." *Elgersma v. DePaul Health Center*, 829 S.W.2d 35, 37 (Mo.App. 1992); *Weniger v. Pulitzer Publishing Co.*, 860 S.W.2d 359, 361 (Mo.App.1993). See also *Kintz v. Schnucks Markets, Inc.*, 889 S.W.2d 121, 124 (Mo.App.1994) ("There may be cases where notice is required for a claim of injury from repetitive trauma."). None of these cases, however, denied benefits because the claimant did not notify the employer of an occupational disease. *Elgersma*, 829 S.W.2d at 38 (employer had actual notice of claim, without prejudice due to untimely notice—benefits awarded); *Weniger*, 860 S.W.2d at 362 (benefits denied due to the two-year statute of limitation in section 287.430); *Bryant v. Ireco, Inc.*, 963 S.W.2d 346, 348–49 (Mo.App. 1997) (disease equally known to claimant and employer—benefits awarded); *Kintz*, 889 S.W.2d at 124 (employer claimed no prejudice—benefits awarded).

▪ This dicta should not be followed because the statutes do not require an employee to notify the employer of occupational diseases. By section 287.420, an employer must receive notice of an injury, for compensation proceedings to be maintained. However, notice is required after an "accident," describing the "time, place, and nature of the injury." Section *287.420*. By this plain language, section 287.420 does not encompass occupational diseases. See *sections 287.020.2* and *287.067.1; cf. 287.127.1(2)*.

The statute's history confirms this meaning. The notice requirement in section 287.420 has not changed since the original compensation law in 1925. *H.B. 112, sec. 38, 1925 Mo. Laws 395; S.B. 214, sec. 387.420, 1965 Mo. Laws 410*. The original compensation law did not include occupational diseases. *H.B. 112, sec. 7(b), 1925 Mo. Laws 380; H.B. 498, sec. 1, 1931 Mo. Laws 383*. When occupational diseases were comprehensively added to the compensation law, the amendment referenced the statute of limitations, but not the notice provision in 287.420. *Section 287.063.6 RSMo 1959*, now codified as *Section 287.063.3*. The notice requirement in section 287.420 does not apply to occupational diseases. *Maxon*, 9 S.W.3d at 733; *Bryant*, 963 S.W.2d at 348; *Weniger*, 860 S.W.2d at 361; *Elgersma*, 829 S.W.2d at 37; *Prater v. Thorngate, Ltd.*, 761 S.W.2d 226, 229 (Mo.App.1988).

▪ The exception in section 287.067.7 does not apply in this case, because Endicott had over three months of exposure with GTI. As the last employer to expose Endicott to the hazard of the three occupational diseases for which claim is made, GTI is solely liable under 287.063.2.

### III.

The decision of the Commission is reversed, and the case is remanded.

All concur.