**Harold Duane COPELAND, Claimant–Respondent,**

v.

**ASSOCIATED WHOLESALE GROCERS, Employer– Appellant,**

and

**Elite Logistics, Inc., Employer– Respondent.**

No. 27480.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 16, 2006.

Rehearing Denied Nov. 7, 2006.

Application for Transfer Denied Dec. 19, 2006.

Patrick J. Platter, Jeffrey C. Goodnight, Neale & Newman, L.L.P., Springfield, MO, for Appellant.

Jerry A. Harmison, Jr., Harmison & Pearman, P.C., Springfield, MO, for Respondent Elite Logistics, Inc.

William W. Francis, Jr., Ryan E. Murphy, Placzek & Francis, Springfield, MO, for Respondent Harold Duane Copeland.

GARY W. LYNCH, Judge.

Appellant Associated Wholesale Grocers, Inc. ("AWG") appeals the decision of the Labor and Industrial Relations Commission ("Commission") assessing liability against it for an award of workers' compensation benefits to Respondent Harold Duane Copeland ("Claimant"). AWG claims that the Commission, misapplying the rule of last exposure in section 287.063,[1] erroneously assessed liability for the award against it rather than against Claimant's last employer, Respondent Elite Logistics, Inc. ("Elite"). Finding merit in this claim, we reverse and remand.

## 1) *Factual and Procedural Background*

Claimant was employed as a truck driver for AWG for many years. During his employment with AWG, Claimant drove an 18–wheel tractor-trailer throughout Arkansas, Missouri, and Kansas. His job also entailed helping to unload the truck of anywhere from 400 to 1,600 boxes, each weighing approximately 30 to 80 pounds. As part of his employment with AWG, Claimant was exposed to the risk of developing carpal tunnel syndrome and did in fact develop carpal tunnel syndrome in his hands and wrists.

On January 14, 2000, Dr. Scott McMurray, an orthopedic surgeon, diagnosed

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

Claimant with bilateral carpal tunnel syndrome, with his left hand being worse than his right. Claimant reported these findings to AWG on January 31, 2000. On March 17, 2000, AWG denied Claimant's claim for compensation for this medical condition. Claimant last worked for AWG on March 30, 2000.

On April 5, 2000, Claimant went back to Dr. McMurray to have a bilateral carpal tunnel release performed on his left hand. On May 19, 2000, Claimant had his last visit with Dr. McMurray and was released from his care, it being determined that Claimant had reached maximum medical improvement.[2]

Claimant became employed by Elite on June 1, 2000. His work duties for Elite consisted of the same work duties as performed for AWG. Over a year later, on June 21, 2001, and while still employed by Elite, Claimant filed his Claim for Compensation against AWG for carpal tunnel syndrome, an occupational disease. He amended his claim on August 2, 2001, to include Elite.

All parties stipulated to the facts as stated and the amount of Claimant's damages. Those damages included medical expenses, temporary total disability, and permanent partial disability. The only issue left to the determination of the Administrative Law Judge of the Division of Workers' Compensation ("ALJ") was which employer had the responsibility of paying the benefits owed.

The ALJ determined that AWG was liable to pay the award. AWG appealed to the Commission, which affirmed the ALJ's decision by issuance of its Supplemental Opinion. This appeal followed.

### 2) Standard of Review

We defer to the Commission on issues of fact. Section 287.495; *Endicott v. Display Technologies, Inc.*, 77 S.W.3d 612, 615 (Mo. banc 2002). Questions of law are reviewed *de novo. Id.*

### 3) Rule of Last Exposure

 The sole issue in this appeal is the application of the pre–2005 version of section 287.063,[3] sometimes referred to as the rule of last exposure, to the undisputed and stipulated facts to determine whether AWG or Elite is liable for Claimant's award. The pertinent part of section 287.063 (pre–2005 revision) read:

1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists, subject to the provisions relating to occupational disease due to repetitive mo-

---

2. The reply brief filed by AWG challenged the record support for a finding that Claimant had reached maximum medical improvement as of this date. However, at oral argument counsel for AWG conceded that the medical record stipulated to by the parties supported this determination.

3. For comparison purposes, section 287.063, as amended in 2005, now reads, in pertinent part:

> 1. An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists, subject to the provisions relating to occupational disease due to repetitive motion, as is set forth in subsection 8 of section 287.067.
> 2. The employer liable for the compensation in this section provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease prior to evidence of disability, regardless of the length of time of such last exposure, subject to the notice provision of section 287.420.

tion, as is set forth in subsection 7 of section 287.067, RSMo.

2. The employer liable for the compensation in this section provided shall be the employer in whose employment the employee was last exposed to the hazard of the occupational disease for which claim is made regardless of the length of time of such last exposure.

■ "This last exposure rule is not a rule of causation." *Endicott,* 77 S.W.3d at 615. "Rather, as the starting point, the last employer before the date of claim is liable if that employer exposed the employee to the hazard of the occupational disease." *Id.*

Section 287.067.7[4] (less than three months' exposure) has been recognized as a turning point to shift liability away from the last employer. *Id.* Both AWG and Elite concede that this exception is not applicable in this case.

Another turning point shifting liability away from the last employer has been recognized by our court in *Maynard v. Lester E. Cox Med. Ctr./Oxford Healthcare,* 111 S.W.3d 487 (Mo.App.2003). "For the liability for claimant's occupational diseases to [accrue to] subsequent employers, claimant would have to have been 'employed in an occupation or process in which the hazard of the disease exists.'" *Id.* at 491 (citing section 287.063.1); *see also Maxon v. Leggett & Platt,* 9 S.W.3d 725, 730 (Mo.App.2000), *overruled on other grounds by Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 225 (Mo.banc 2003). In *Maynard,* we found that there was no substantial, competent, or credible evidence that claimant was exposed to the

hazard of the occupational disease in her subsequent employment. *Id.* Here, the undisputed facts show that, as Elite, the subsequent employer, stated in its brief: "Claimant's work for Elite exposed him to the hazard (repetitive motion) capable of causing carpal tunnel syndrome." Therefore, the turning point identified in *Maynard* is not applicable in this case.

Claimant worked for AWG as a truck driver. The repetitive motions of his job duties at AWG exposed him to the hazards of developing carpel tunnel syndrome, which he in fact developed. It is undisputed and stipulated by the parties that Claimant's job duties for his subsequent employer, Elite, were the same as when he worked for AWG. As admitted by Elite in its brief, Claimant was exposed to the hazard of developing carpel tunnel syndrome, the occupational disease for which claim is made, while employed by Elite.

With no turning points being otherwise applicable, the undeniable conclusion is that the starting point—the last employer before the date of claim is liable if that employer exposed the employee to the hazard of the occupational disease—becomes the ending point, i.e., Elite is liable. *Endicott,* 77 S.W.3d at 616.

## 4) *Injurious Exposure and Causation*

■ Upon the undisputed and stipulated facts, the ALJ concluded that "[s]ince Claimant's exposure by Elite was after the date the treatment was administered and the injury resolved, then *Elite could not have caused or substantially contributed to cause* the injury for which Claimant was

---

4. Section 287.067.7 (pre–2005 revision) provided:

With regard to occupational disease due to repetitive motion, if the exposure to the repetitive motion which is found to be the cause of the injury is for a period of less

than three months and the evidence demonstrates that the exposure to the repetitive motion with a prior employer was the substantial contributing factor to the injury, the prior employer shall be liable for such occupational disease.

treated."[5] (Emphasis added). In its Supplemental Opinion affirming the decision of the ALJ, the Commission stated: "At the time the claim was filed, even though employee was employed with Elite, there was no *injurious* exposure while employed with Elite at least from the record presented." (Emphasis added).

From these statements, it is clear that the Commission concluded that section 287.063 requires that the exposure to the hazard of an occupational disease by the last employer be injurious and thereby cause or contribute to cause the occupational disease for which claim is made.[6] This requirement is not found in section 287.063 and directly contradicts the holding in *Endicott*, that the last exposure rule is not a rule of causation. *Id.* at 615.

In support of this erroneous legal conclusion, the Commission cited the cases of *King v. St. Louis Steel Casting Co.*, 353 Mo. 400, 182 S.W.2d 560 (1944), and *White v. Scullin Steel Co.*, 435 S.W.2d 711 (Mo. App.1968). We have previously pointed out that *King* and *White* were commenced before the enactment of section 287.063 and did not involve the application of that section. *Tunstill v. Eagle Sheet Metal Works*, 870 S.W.2d 264, 267 (Mo.App.1994). In *Tunstill*, after finding *King* and *White* inapposite, we stated:

Federated's argument is, in essence, that the terminology "was last exposed to the hazard of occupational disease," in § 287.063.2, should be construed as "was last *injuriously* exposed to the hazard of occupational disease." The statute does not so read, and it may not be so interpreted. Exposure to disease-producing conditions is not synonymous with contraction of the disease. If the legislature wanted to require a causal relation between the exposure and the disability, it would have so stated.

*Id.* at 272.[7]

The Commission also cites *Johnson v. Denton Constr. Co.*, 911 S.W.2d 286 (Mo. banc 1995), as having facts "almost identical" to the facts as in this case and supportive of its assessment of liability against AWG. In *Johnson*, the employee reported his bilateral carpal tunnel syndrome to his employer, Denton, who refused to provide workers' compensation benefits and fired him. *Id.* at 287. The employee filed a claim for compensation and, thereafter, went to work for another employer, Lock and Sand, wherein he was exposed to the hazards of carpal tunnel syndrome. *Id.* Denton argued that the last exposure rule in section 287.063 assigned liability to Lock and Sand because the employee was exposed to the hazard of the occupational disease while working for it, i.e., his last

---

5. When the commission incorporates the ALJ's opinion and decision, as in this case, the reviewing court will consider the commission's decision as including those of the Administrative Law Judge. *Clark v. FAG Bearings Corp.*, 134 S.W.3d 730, 734 (Mo.App. 2004).

6. Elite joins the Commission in this conclusion, stating: "[T]he hazard to which Elite exposed Claimant did not *cause* Claimant's condition ... There is no evidence in the present case indicating Claimant experienced any work related *exposure* with Elite *that adversely affected his left wrist*. ... Claimant's subsequent employment with Elite was not *a*

*factor in producing* his left carpal tunnel syndrome." (Emphasis added).

7. We are cognizant of the fact that, without such a causal relation, an employer may, as in this case, be liable for damages it had little, if any, means within which to avoid while making the decision to hire an employee. However, such inequities are within the purview of the legislature to consider and not for this court to carve out an exception which the legislature saw fit not to provide in the statute. It appears the legislature attempted to address this issue in the 2005 amendment to section 287.063. *See* footnote 3.

employer. *Id.* In reply to this argument, the court stated: "The starting point in applying the last exposure rule is that the employer liable for compensation is the last employer to expose the employee to the occupational hazard *prior to the filing of the claim." Id.* at 288 (emphasis added). In the instant case, the last employer to expose Claimant to the occupational hazard of carpal tunnel syndrome prior to the filing of the claim for the occupational disease of carpal tunnel syndrome was Elite, not AWG.

We are sympathetic to the Commission's sense of justice and fairness, especially in light of the facts in this case, whereby AWG denied Claimant worker compensation benefits; Claimant had received substantial medical treatment and had reached maximum medical improvement; Elite had minimal, if any, legal means of inquiring as to Claimant's pre-employment medical status and medical history; and Claimant, for some unexplained reason, delayed for more than a year in filing a claim for compensation. However, we and the Commission are constrained by the language of the statute as enacted by the legislature and its interpretation by our supreme court in *Johnson* and *Endicott. See* Mo. CONST. art. V, § 2.

### 5) *Decision*

In assessing the liability for Claimant's award against AWG and not against Elite, the Commission erroneously declared and erroneously applied the law. Therefore, we reverse the decision of the Commission and remand for entry of a decision in accordance with this opinion.

BATES, C.J., P.J., and GARRISON, J., concur.