David G. McGHEE, Employee– Appellant/Respondent,

v.

W.R. GRACE & CO., Employer– Respondent/Cross– Appellant.

Nos. SD 30060, SD 30065.

Missouri Court of Appeals, Southern District, Division One.

May 28, 2010.

("Claimant") contracted asbestosis after

R. David Ray, West Plains, MO, for Appellant.

Jennifer Arnett, Overland Park, KS, for Respondent.

DON E. BURRELL, Judge.

Appellant/Respondent David McGhee ("Claimant") contracted asbestosis after years of working for Respondent/Cross–

Appellant W.R. Grace & Company ("Employer") in a plant that manufactured home insulation containing asbestos. The parties stipulated that Claimant had sustained an occupational disease that arose out of and in the course of his employment which rendered him permanently and totally disabled. The claim was tried on the issue of the amount of benefits to be awarded before an Administrative Law Judge ("ALJ"). The ALJ's decision was thereafter affirmed and adopted by the Labor and Industrial Relations Commission ("the Commission"). Both parties now appeal the Commission's decision to this court, and we have consolidated their separate appeals. Agreeing with the arguments asserted by Claimant, we affirm in part and reverse in part with instructions.

### Factual and Procedural Background

Claimant began working at Employer's Zonolite Plant in St. Louis in 1964. Employer and Claimant agree that Claimant's average weekly wage at the time he ceased working for Employer in 1977 was $242.87. The work Claimant performed for Employer included the bagging of various materials, including Monokote (a fireproofing product) and vermiculite (a mineral used in attic insulation). The vermiculite Claimant was bagging contained asbestos. Claimant's exposure to this asbestos eventually caused him to contract asbestosis, a disease marked by the inflammation and scarring of lung tissue, caused by the breathing of asbestos fibers and the body's inability to expel those fibers.

Claimant testified that during the first six or seven years of his employment with Employer, he was not provided with any safety equipment or protective clothing. Claimant testified that in about 1972 or 1973, Employer began providing him with

throwaway paper masks. When Employer began receiving complaints from its employees about these paper masks, it began providing a different type of mask. Employer presented no evidence in regard to its provision of safety equipment or protective clothing.

Claimant's asbestosis was first diagnosed in 2001. Claimant sought weekly wage benefits based on the average weekly wage statute in effect in 2001. Claimant also sought past and future medical benefits and included a claim for a statutory 15% penalty based on Employer's failure to provide safety equipment as required by law during his course of employment.

The ALJ applied the $95.00 cap on weekly wage benefits in effect in 1977—the year Claimant was last exposed to asbestos—to Claimant's weekly wage benefits claim. The ALJ awarded Claimant past and future medical benefits and also included a 15% penalty on all benefits awarded, including medical benefits. In their respective appeals of the ALJ's decision to the Commission, Claimant contested the ALJ's application of the 1977 weekly benefits cap, and Employer contested the imposition of the 15% statutory penalty. While Employer did not contest the ALJ's award of medical expenses, it did dispute the validity of including those expenses in the calculation of the 15% penalty. The Commission, with one commissioner dissenting, affirmed the ALJ's decision and incorporated her findings.

### Analysis

#### Standard of Review

Our review of the Commission's decision is governed by article V, section 18 of the Missouri Constitution and by section 287.495.[1] "The court, on appeal,

---

1. Unless otherwise noted, all references to statutes are to RSMo 2000.

shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Section 287.495.1. "There is nothing in the constitution or section 287.495.1 that requires a reviewing court to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). "We defer to the Commission on issues of fact." *Copeland v. Associated Wholesale Grocers*, 207 S.W.3d 189, 191 (Mo.App. S.D.2006). However, "[q]uestions of law are reviewed *de novo.*" *Id.* "When the commission incorporates the ALJ's opinion and decision, as in this case, the reviewing court will consider the commission's decision as including those of the Administrative Law Judge." *Id.* at 193 n. 5 (citing *Clark v. FAG Bearings Corp.*, 134 S.W.3d 730, 734 (Mo.App. S.D.2004)).

*Claimant's Point [2] on Appeal (SD30060): Date of Injury*

Claimant argues the Commission erred in applying the cap in effect in 1977 to his claim for weekly wage benefits because section 287.200 provides that compensation is calculated as of the "date of the injury for which compensation is being made" and that that date for Claimant was in 2001—the date when he was first diagnosed with asbestosis, not (as found by the Commission) the date of his last exposure to asbestos. We agree.

■■■ The resolution of this case involves the interpretation of workers' compensation statutes and their application to Claimant's claim. "Decisions which are clearly interpretations or applications of law, rather than determinations of fact, are reviewed by us for correctness without deference to the Commission's judgment. 'Findings of ultimate facts reached through application of rules of law, rather than by natural reasoning based on facts alone, are conclusions of law' which are reviewable for misstatement or misapplication." *Sanders v. St. Clair Corp.*, 943 S.W.2d 12, 16 (Mo.App. S.D.1997) (citing and quoting *Simmerly v. Bailey Corp.*, 890 S.W.2d 12, 14 (Mo.App. S.D.1994)).

Claimant's claim for weekly wage benefits was brought pursuant to section 287.200, which, in pertinent part, states:

1. Compensation for permanent total disability shall be paid during the continuance of such disability for the lifetime of the employee at the weekly rate of compensation in effect under this subsection on the date of the injury for which compensation is being made. The amount of such compensation shall be computed as follows:

. . . .

(4) For all injuries occurring on or after August 28, 1991, the weekly compensation shall be an amount equal to sixty-six and two-thirds percent of the injured employee's average weekly earnings as of the date of the injury; provided that the weekly compensation paid

---

2. Each party's brief actually includes two separately numbered paragraphs as points relied on. However, only one of each parties' "points" contains an allegation of error. The other simply asserts that the Commission did not err in granting the relief the other party now challenges on appeal.

under this subdivision shall not exceed an amount equal to one hundred five percent of the state average weekly wage[.]

Section 287.200.1. As previously indicated, the parties stipulated that Claimant's last weekly wage while working for Employer was $242.87. If the date of Claimant's "injury" was when he was diagnosed with asbestosis in 2001, his weekly benefit under the law in effect at that time would be two-thirds of that amount, or $161.91 per week. If, on the other hand, his date of injury was the date of his last exposure to asbestos, when Claimant ceased working for Employer in 1977, the parties stipulate that his wage compensation would be capped at $95.00 per week pursuant to the version of the statute in effect at that time.

In reaching her decision that the date of Claimant's injury for purposes of section 287.200 was 1977, the ALJ relied on *Enyard v. Consolidated Underwriters*, 390 S.W.2d 417 (Mo.App.St.L.D.1965). Although the ALJ noted that "the issue of the wage rate was not truly in dispute in *Enyard*," she relied on Professor Larson's interpretation of *Enyard* as set forth in his treatise on workers' compensation occupational disease cases. That treatise purports to answer the question before this court as follows:

> The question of which benefit level applies is encountered in its most acute form in long-latency occupational disease cases. If a worker's last injurious exposure was in 1965 and his disability appeared in 1995, the choice between date of exposure and date of disability might well mean the difference between $50 and $350 a week.

> The majority rule, as a result of either judicial decision or statutory provision, is that the level at the time of exposure does not control; rather, the time of disability, knowledge, or manifestation is decisive.

> In a substantial minority of states, however, again by either statute or decision, the 'last exposure benefit rule' is still in force. Several states in this group have softened the impact of the rule somewhat. In Maine and Minnesota, supplemental benefits are provided which approximately close the gap between current benefits and time-of-exposure benefits.

2–53 Arthur L. Larson & Lex Larson, *Larson's Workers' Compensation*, § 53.05[1] (Desk Edition 2007). Larson's treatise then includes Missouri within the minority of states he says follow the "last exposure benefit rule," citing *Enyard*. We believe Professor Larson has oversimplified the actual holding in *Enyard*.

In *Enyard*, 390 S.W.2d at 419, the claimant had worked for a steel company from 1936 to 1943 and became disabled with advanced silicosis in 1960, thereafter filing a claim for workmen's compensation. *Id.* When faced with the question of whether the claim was filed within the applicable statute of limitations period, the court held:

> In latent injury or latent occupational disease the statute of limitations commences to run from the time it becomes reasonably discoverable and apparent to the employee that he has sustained a compensable injury. The injury is reasonably discoverable and apparent when the employee loses time from his work or has to seek medical advice as a result of his injury.

*Id.* at 422. The court next determined that the insurance carrier with coverage on the claim was the insurer for the steel company the employee worked for at the time of his most recent exposure to the hazard. *Id.* at 423. Although the employer liable for the injury is the employer that

employed the claimant at the time of the claimant's "last injurious exposure" to the hazard at issue, the injury does not become a "compensable injury" until "disability occurs." *Id.* at 429–30. In so holding, the *Enyard* court stated, "We cannot believe that the legislature contemplated that employees be denied compensation merely because the relationship of employer and employee was not in existence at the time claimant became disabled from the occupational disease[.]" *Id.* at 430.

The only portion of *Enyard* that dealt with the Commission's computation of the employee's weekly wage reads as follows:

In its final point Consolidated [the employer's insurance company at the time of the employee's last exposure to the hazard] contends that the Commission erred in not complying with the statute concerning the computation of the weekly wage, pointing out that § 287.250 RSMo.1959, 15 V.A.M.S., prescribes that wages of employees are to be computed on the basis of the annual earnings which the injured person received during the year next preceding the injury. We have heretofore held that *in an occupational disease case the injury occurred at the time of claimant's last exposure while in the employ* of Scullin [the employer that last exposed the claimant to the type of hazard at issue], which employment terminated January 2, 1943. As heretofore pointed out, it was stipulated[3] by all the parties that claimant's average weekly earnings for the last year of his employment with Scullin was $31.13, which was the average weekly wage during the last year of claimant's employment as found by the Commission. *Having found that claimant's injury occurred at the time*

*of his last exposure in the employ of Scullin,* the Commission's finding is correct and we rule this point against Consolidated.

*Id.* at 430–31 (emphasis added).

While *Enyard* did refer to the date of injury as the date of last exposure to the hazard at issue, it did so in the context of determining which employer and insurance carrier was liable for the payment of any compensation related to the employee's occupational disease. In regard to when the employee incurred a duty to give timely notice of his injury to his employer and when the applicable statute of limitation began to run on the employee's claim, the *Enyard* court found that these were not implicated until a *compensable* injury had occurred—a date it found to be the date of disability, not the date of injury. *Id.* at 430. Although *Enyard* set forth the weekly wage being earned by the employee at the time of his last exposure to the hazard, it did not make a determination as to what, if any, statutory limitation would apply to any weekly wage benefit awarded. As a result, *Enyard* does not resolve the issue before us.

It should also be noted that in an occupational disease case, the eastern district of this court did not follow *Enyard's* definition of the date of injury. In *Prater v. Thorngate, Ltd.,* 761 S.W.2d 226 (Mo.App. E.D.1988), the claimant employee worked as a sewing machine operator from 1983 to 1986. That employment required her to exert pressure on fabric in a repetitive manner for 40 hours per week. *Id.* at 227. In 1984, the claimant developed symptoms of bilateral carpal tunnel syndrome, which was ultimately diagnosed in 1985. *Id.* at 227–28. The Eastern District found that the claimant was not barred from recovery

---

3. While the insurer did stipulate to this being the wage the employee was earning, it did not stipulate that this was the correct wage period

to use in calculating the employee's benefits. *Id.* at 421.

for failing to "give notice thirty days after her problems began in December 1984." *Id.* at 228. In so holding, the court stated:

[T]he notice statute does not bar recovery in this case. An employee with an occupational disease is not considered "injured" until the time when the disease causes a compensable injury. *Renfro v. Pittsburgh Plate Glass Co.,* 235 Mo.App. 226, 130 S.W.2d 165, 171 (1939). This is the time when the disease causes the employee to become disabled and unable to work. *Sheehan v. Springfield Seed & Floral,* 733 S.W.2d 795, 798 (Mo. App.1987).

*Id.* at 228–29. The court went on to note:

We have doubts, however, whether section 287.420 even applies to cases of occupational disease. The statute uses the terms "injury" and "accident." "Injury" is defined as "in no case except as specifically provided" including occupational disease. § 287.020.3, RSMo 1986. "Accident" refers to a sudden or violent event, § 287.020.2, RSMo 1986, and does not mesh with the definition of occupational disease, § 287.067.1, RSMo 1986. Thus, the notice statute does not facially apply to occupational diseases. In addition, occupational disease does not fit under the purpose of the notice statute, which is to "give the employer a timely opportunity to investigate the facts as to whether an accident did occur, and, if it did, to promptly furnish medical attention to the employee to minimize the injury." *Klopstein v. Schroll House Moving Co.,* 425 S.W.2d 498, 503 (Mo. App.1968).

*Id.* at 229.

In *Renfro v. Pittsburgh Plate Glass Co.,* 235 Mo.App. 226, 130 S.W.2d 165 (Mo.App. St.L.D.1939), the claimant employee was exposed to silica dust and demonstrated signs of illness as early as 1935 but was not disabled as a result of his occupational disease until 1937. *Id.* at 170. The court in *Renfro* held that it was erroneous for the Commission to find that the date of injury was any time before the employee suffered a loss of earning power, stating, "[T]he purpose of a workmen's compensation act is not indemnity for any physical ailment, but for loss of earning power, disability to work." *Id.* at 171–73.

Claimant's position before the ALJ was that under section 287.200, the weekly compensation rate is calculated using the "date of the injury for which compensation is being made[,]" citing *Prater.* As the ALJ properly noted, *Prater* did not involve a dispute about the applicable weekly benefit rate—it was about whether the claimant timely provided her employer with notice of her injury pursuant to section 287.420. *Prater,* 761 S.W.2d at 228–29. It appears that neither *Enyard* nor *Prater* are directly on point and that the question before us is one of first impression in regard to an occupational disease claim brought in 2001.

As earlier noted, section 287.200 governs the amount of workers' compensation benefits to be paid in the event of a permanent total disability and states that "[c]ompensation for permanent total disability shall be paid during the continuance of such disability for the lifetime of the employee *at the weekly rate of compensation in effect* under this subsection *on the date of the injury for which compensation is being made.*" Section 287.200.1 (emphasis added).

In construing a statute, this court must consider the words used in the statute in their plain and ordinary meaning in order to ascertain the intent of the lawmakers. *Wollard v. City of Kansas City,* 831 S.W.2d 200, 203 (Mo. banc 1992). The legislature is presumed not to enact meaningless provisions. When the legislature amends a statute, it is

presumed to have intended the amendment to have some effect. *Id.* Where no exceptions are made in terms, none will be made by mere implication or construction. *Rathjen v. Reorganized School Dist. R–II of Shelby County,* 365 Mo. 518, 284 S.W.2d 516, 522 (Mo. banc 1955). If the language of the statute is unambiguous, there is no basis for construction of the statute and the court must give effect to the statute as it is written. *State ex rel. Mo. State Bd. v. Southworth,* 704 S.W.2d 219, 224 (Mo. banc 1986).

*Tunstill v. Eagle Sheet Metal Works,* 870 S.W.2d 264, 271 (Mo.App. S.D.1994).

▮ The difficulty in construing this statute lies in the inherent conflict between the concepts of injury—generally a distinct event that occurs at a particular point in time—and occupational disease—a process that occurs gradually over time. This court is now directly tasked, without any specific direction from the legislature,[4] with determining the date on which Claimant's occupational disease "injury" "occurred" for purposes of determining the appropriate statutory limit on weekly wage benefits payable under section 287.200. If Claimant's occupational disease "injury" for purposes of section 287.200 "occurred" at the time he became disabled and unable to work, the applicable date of injury was in 2001, when he was diagnosed as having asbestosis, and section 287.200.1(4) would govern the weekly wage benefits cap applicable to his claim. Under section 287.200.1(4), the weekly compensation for "all injuries occurring on or after August 28, 1991" is "an amount equal to sixty-six and two-thirds percent of the injured employee's average weekly earnings as of the date of the injury[.]"

If, on the other hand, the "date of injury" for purposes of section 287.200 was the date of Claimant's last exposure to asbestos dust, his injury occurred in 1977. If 1977 is Claimant's date of injury for purposes of section 287.200, then any limitation on his weekly wage benefits would be determined using the version of section 287.200 in effect in 1977. The weekly compensation percentage in effect at that time was also sixty-six and two-thirds percent of the employee's earnings, but the weekly wage benefit cap was $95.00. Section 287.200.1, RSMo Cum.Supp.1975.

Because coverage for occupational diseases was not contemplated at the time the original workers' compensation statutes were enacted, the courts have had difficulty in applying the law to claims for occupational disease. For example, the Workers' Compensation Act's definition section states that, "[t]he terms "injury" and "personal injuries" shall mean violence to the physical structure of the body and to the personal property which is used to make up the physical structure of the body [ ... ]. *These terms shall in no case except as specifically provided in this chapter be construed to include occupational disease in any form* [.]" Section 287.020.3 (emphasis added). This section (which has also remained unchanged) has caused confusion in the courts ever since the legislature began to recognize claims for occupational diseases. *See Prater,* 761 S.W.2d at 229 (declining to decide whether the 1986 notice statute, section 287.420, applied to occupational disease claims in the "hope that the legislature will clarify the problem"). Unfortunately, this hope is one that has remained unrealized.

The section giving rise to a claim for occupational disease reads as follows:

---

4. The language of this section remains un- changed as of the writing of this opinion.

An employee shall be conclusively deemed to have been exposed to the hazards of an occupational disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists, subject to the provisions relating to occupational disease due to repetitive motion, as is set forth in subsection 7 of section 287.067, RSMo.

Section 287.063.1. In regard to determining the appropriate time period within which an occupational disease claim may be brought, the General Assembly has specifically determined that the statute of limitation "shall not begin to run in cases of occupational disease until it becomes reasonably discoverable and apparent that a compensable injury has been sustained[.]" Section 287.063.3. Claimant's specific claim for asbestosis falls under section 287.067.5, which applies to any "disease of the lungs ·or respiratory tract" resulting from exposure to "carcinogens [ ... ] if a direct causal relationship is established."

. ▮▮▮▮ When looking to the language of section 287.200, it appears clear to us that the legislature was considering only *compensable* injuries, as it requires the calculation to be based on rates in effect "on the date of the injury *for which compensation is being made.*" Section 287.200.1 (emphasis added). Therefore, it would contradict the plain language of the statute to hold that the "date of injury" referred to in section 287.200 was the "date of last exposure" or some other time period before the injury became compensable. Compensation is not "being made" because Claimant was last exposed to asbestos in 1977; rather, compensation is "being made" because Claimant has an occupational disease that was diagnosed in 2001.[5] "Exposure to disease-producing conditions is not synonymous with contraction of the disease." *Tunstill*, 870 S.W.2d at 272. Furthermore, we presume the General Assembly is aware of *Prater*, *Tunstill*, and other modern cases defining "date of injury" for various purposes as the date on which an injury becomes "compensable." And, although the legislature made amendments to the workers' compensation statutes in 2005 and 2008, it left the language of 287.200 unchanged. "In construing statutes to ascertain legislative intent it is presumed the legislature is aware of the interpretation of existing statutes placed upon them by the state appellate courts[.]" *Kilbane v. Director of the Dep't of Revenue*, 544 S.W.2d 9, 11 (Mo. banc 1976) (quoting *Gross v. Merchants-Produce Bank*, 390 S.W.2d 591, 597 (Mo. App.K.C.D.1965)). The *Enyard* case was decided before section 287.200 was enacted with its language referring to the "date of the injury *for which compensation is being made.*"

We find that the date of injury for purposes of determining which compensation rate cap should be applied under section 287.200 is the date on which the injury becomes "compensable"—the date on which the claimant becomes disabled. For this reason, we find that the Commission misapplied the law when it capped Claimant's weekly benefits at $95 pursuant to the cap in effect in 1977. Instead, the applicable cap is the one that was in effect in 2001—sixty-six and two-thirds percent of the Claimant's average weekly earnings at the time he left Employer's employment, in this case, $161.91. Point granted.

---

**5.** The General Assembly also had the benefit of the reasoning of *Renfro, supra,* and its progeny, which yields a similar result: "We are unable to perceive how it can logically or justly be held that there is a compensable injury in an occupational disease case until there is disability on the part of the employee which affects his earning power." *Renfro v. Pittsburgh Plate Glass Co.*, 235 Mo.App. 226, 130 S.W.2d 165, 170 (Mo.App.St.L.D.1939).

Because the Commission misapplied the law, this portion of its order must be reversed, and the matter remanded for the entry of a compensation award that sets Claimant's weekly wage benefits at $161.91 per week.

*Employer's Point on Appeal (SD 30065): Assessment of the 15% Statutory Penalty*

Employer's point on appeal reads as follows:

THE COMMISSION ERRED IN AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S IMPOSITION OF A 15% PENALTY ON ALL BENEFITS AWARDED BECAUSE [CLAIMANT] HAS NOT MET HIS BURDEN OF PROOF TO ESTABLISH THAT EMPLOYER FAILED TO COMPLY WITH SAFETY STATUTES, IN THAT NO EVIDENCE WAS OFFERED REGARDING THE ALLEGED FAILURE TO COMPLY EXCEPT CLAIMANT'S OWN TESTIMONY WHICH IS LEGALLY INSUFFICIENT TO SUPPORT SUCH A FINDING.

▆▆▆ While this point seems to challenge the evidentiary basis for the imposition of *any* statutory penalty, it could also be interpreted more narrowly as challenging its imposition on "all benefits" awarded to Claimant. Based on the arguments Employer made to the ALJ, we presume that Claimant's medical benefits would be the portion of "all benefits" being challenged, but the point does not so indicate. In any event, we need not resolve the matter because the argument section that follows the point challenges only the evidentiary basis for the imposition of any penalty. As a result, any challenge to the applicability of the statutory penalty to any particular portion of Claimant's award has been abandoned. *See Summer Chase Second Addition Subdivision Homeowners Ass'n v. Taylor–Morley, Inc.*, 146 S.W.3d 411, 418 (Mo.App. E.D.2004) ("Issues raised in the points relied on that are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review") (citation omitted).

The portion of Employer's point preserved for our review alleges that Claimant failed to present competent evidence proving that Employer failed to comply with safety statutes in effect during the course of Claimant's employment because Claimant's own testimony is legally insufficient.

▆▆▆ "We determine whether the award is supported by competent and substantial evidence 'by examining the evidence in the context of the whole record.'" *Custer v. Hartford Ins. Co.*, 174 S.W.3d 602, 609 (Mo.App. W.D.2005) (quoting *Moriarty v. Treasurer of the State of Missouri*, 141 S.W.3d 69, 72 (Mo.App. E.D. 2004) and *Hampton*, 121 S.W.3d at 223). "We must ascertain 'whether the Commission could have reasonably made its findings and reached its result upon consideration of all of the evidence before it.'" *Custer*, 174 S.W.3d at 609 (quoting *Henley v. Tan Co. Inc.*, 140 S.W.3d 195, 198 (Mo. App. S.D.2004)). We must examine the entire record "to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Custer*, 174 S.W.3d at 609.

▆▆▆ Section 287.120.4 provides that "[w]here the injury is caused by the failure of the employer to comply with any statute in this state or any lawful order of the division or the commission, the compensation and death benefit provided for under this chapter shall be increased fifteen per-

cent." Chapter 292 was enacted in 1939 and required employers to provide their employees with appropriate safety equipment. The relevant statutes have not been changed by the General Assembly since 1939. Section 292.300 requires:

That every employer of labor in this state engaged in carrying on any work, trade or process which may produce any illness or disease peculiar to the work or process carried on, or which subjects the employee to the danger of illness or disease incident to such work, trade or process, to which employees are exposed, shall for the protection of all employees engaged in such work, trade or process, adopt and provide approved and effective devices, means or methods for the prevention of such industrial or occupational diseases as are incident to such work, trade or process.

Section 292.310 classifies the types of articles that are considered dangerous to health:

The carrying on of any process, or manufacture, or labor in this state in which antimony, arsenic, brass, copper, lead, mercury, phosphorus, zinc, their alloys or salts or any poisonous chemicals, minerals, acids, fumes, vapors, gases, or other substances, are generated or used, employed or handled by the employees in harmful quantities, or under harmful conditions, or come in contact with in a harmful way, are hereby declared to be especially dangerous to the health of the employees.

Finally, section 292.320 specifically requires employers to provide clothing and respirators to employees engaging in processes that create "noxious or poisonous dusts."

Every employer in this state to which sections 292.300 to 292.440 apply shall provide for and place at the disposal of the employees so engaged, and shall maintain in good condition without cost to the employees, working clothes to be kept and used exclusively by such employees while at work and all employees therein shall be required at all times while they are at work to use and wear such clothing; and in all processes of manufacture or labor referred to in this section which are productive of noxious or poisonous dusts, adequate and approved respirators shall be furnished and maintained by the employer in good condition and without cost to the employees, and such employees shall use such respirators at all times while engaged in any work productive of noxious or poisonous dusts.

All of these statutes were in effect and applied to Employer during Claimant's period of employment.

"The rule is that the burden of proof rests on the claimant in a workmen's compensation proceeding[.]" *Gudde v. Heiman Grain, Inc.*, 830 S.W.2d 574, 576 (Mo.App. W.D.1992), *overruled on other grounds by Hampton*, 121 S.W.3d 220. "To be entitled to the fifteen percent increase under section 287.120.4, a claimant must demonstrate the existence of the statute or order, its violation, and a causal connection between the violation and the compensated injury." *Akers v. Warson Garden Apartments*, 961 S.W.2d 50, 53 (Mo. banc 1998), *overruled on other grounds by Hampton*, 121 S.W.3d 220. "Regarding section 287.120.4, we observe that the 'purpose of the penalty is to encourage employers to comply with the laws governing safety.'" *Pavia v. Smitty's Supermarket*, 118 S.W.3d 228, 244 (Mo.App. S.D.2003) (quoting *Parker v. Springfield Ry. Servs./Anheuser–Busch, Inc.*, 897 S.W.2d 103, 108 (Mo.App. S.D.1995)).

Employer argues that Claimant did not present any evidence that the injury occurred prior to the time period where the

company furnished masks to its employees or that his "current disease was causally related to any occupational exposure related to an alleged failure by the Employer to provide work clothes." Employer further argues that there was no evidence "that the masks provided were anything other than 'adequate and approved,' which is the statutory standard."

Claimant's amended claim for compensation specifically alleged a violation of section 292.320 by Employer for failing to provide the required protective equipment. Via deposition, Dr. Hyers testified that asbestosis is contracted by the breathing of asbestos mineral fibers. According to Dr. Hyers, when these fibers are inhaled, they "set up an inflammatory reaction in the lungs." The fibers "can't be digested by the body in any way," they "can't be transported out, so the fibrotic process, the scarring process tends to perpetuate in the lungs."

Claimant testified that although Employer had a safety officer visit the plant and perform breathing tests on the employees, no protective clothing or respirators of any kind were provided to employees until 1972 or 1973. Claimant presented evidence that Employer was subject to these laws during Claimant's term of employment, and that Employer failed to provide him with a respirator from 1964 until 1972 or 1973. Claimant testified that the first masks Employer provided in 1972 or 1973 were "just throwaway masks just like you buy at the hardware store" with "a little rubberband type thing" that held it to the employee's head. According to Claimant, the safety officer then visited the site and "made them [Employer] get rid of all them [sic] masks because they wasn't [sic] approved for what [the employees] were working in."

Claimant also presented a "Health Consultation" prepared by the Missouri Bureau of Environmental Epidemiology in cooperation with the U.S. Department of Health and Human Services. This report explained in detail the use of asbestos in Employer's plant, the level of harmful exposure to employees during the relevant time periods, any safety precautions taken by Employer, the health risks associated with asbestos, and conclusions that were consistent with Claimant's situation and testimony.

There was ample evidence that Employer was aware of the hazard at the time Claimant was employed at its Zonolite plant. In addition to the statutes previously cited, OSHA regulation of asbestos-exposed workers began in 1971, and testing in 1971 revealed levels of asbestos dust in the Zonolite plant in excess of the permitted amounts.

 In making a determination of whether the record contains sufficient evidence to support the award, we do not reweigh the evidence. *Custer*, 174 S.W.3d. at 610. "Findings of fact made by the Commission within its powers are conclusive and binding." *Id.* "Accordingly, 'on issues concerning credibility and the weight to be given conflicting evidence, we defer to the Commission's judgment.'" *Id.* (quoting *Moriarty*, 141 S.W.3d at 72). The ALJ specifically found that "[a] safety officer examined the employees at the plant, suggesting that someone suspected exposure to a hazard." Furthermore, asbestosis has been a recognized disease for decades. *See Counts v. Bussman Mfg. Co.*, 298 S.W.2d 508, 510 (Mo.App.St.L.D. 1957).

In this case, there was no contrary evidence. Employer presented no evidence to contradict that presented by Claimant, and the ALJ did not find Employer's argument on the issue persuasive, stating, "It is no answer to say, without any medical support, that [Claimant] might have con-

tracted asbestosis after the date that disposable face masks and later when respirators were provided. [Claimant]'s medical evidence clearly demonstrates that [he] contracted asbestosis as a result of breathing asbestos fibers that cannot be transported out of the body. [ ... ] There is certainly nothing in the record that would support a finding that it was only the exposure after 1972 that caused the occupational disease."

Sufficient competent evidence supported the Commission's award of the 15% statutory penalty. Point denied.

### Decision

That portion of the Commission's order affirming the award to Claimant of the 15% statutory penalty is affirmed. That portion of the Commission's award affirming the capping of Claimant's weekly wage benefits at $95 is reversed, and the Commission is hereby directed to enter an award granting Claimant weekly wage benefits in the amount of $161.91. In all other respects, the award of the Commission is affirmed.

BARNEY, J., and BATES, P.J., Concur.